Marie THOMAS, Plaintiff,

v.

**BET SOUNDSTAGE RESTAURANT,**
et al., Defendants.

No. AW–99–316.

United States District Court,
D. Maryland.

July 19, 2000.

Jon Wyndal Gordon, Baltimore, MD, for Plaintiff.

Thomas Langley McCally, Carr Goodson Warner, Washington, DC, for Defendants.

## *MEMORANDUM OPINION*

WILLIAMS, District Judge.

Presently before the Court is Defendant Xanadu Management's Motion for Summary Judgment. Plaintiff filed a response, Defendant replied accordingly, and the motion is ripe for resolution. No hearing is deemed necessary. *See* Local Rule 105.6 (D.Md.). Upon consideration of the briefs of the parties, and the entire record, for the reasons stated below, the Court will deny Defendant's motion for summary judgment.

## *BACKGROUND*

Plaintiff Marie Thomas brought this action against Defendants Roy Dabney, BrettCo, Inc. ("BrettCo"), and Xanadu Management ("Xanadu") alleging sexual harassment under Title VII as well as state common law claims. The alleged harassment arises out of Plaintiff's employment at BET Soundstage Restaurant as a manger's assistant/reservations coordinator. Plaintiff's direct supervisor was Roy Dabney, the assistant general manager of the restaurant. Plaintiff alleges that Dabney sexually harassed her from June/July 1997 until June 1998. Plaintiff claims Dabney physically assaulted her by groping her rear, putting his arms around her, touching her inner thighs, pulling down her pants, and repeatedly making sexually suggestive comments and requests to her. She also claims that on several occasions, Dabney solicited her for sex, and at times, visited her home unannounced. Plaintiff further alleges that after her repeated refusals of his offers, Dabney spread rumors that she was a lesbian to her co-workers.

Plaintiff claims the harassment culminated to a level where she could no longer continue working at the restaurant, and on June 6, 1998, she resigned. Thereafter, Plaintiff timely filed a complaint with the Prince George's County Human Relations Committee ("HRC"), and named BET Soundstage Restaurant as the respondent.

Two weeks after Plaintiff filed her complaint with the HRC, she requested a right to sue letter. Upon receipt of this letter, the HRC ceased its investigation, and on June 23, 1998, it forwarded her request to the Equal Employment Opportunity Commission ("EEOC"). Thereafter, on November 5, 1998, the EEOC issued a right to sue letter. Plaintiff then filed her action in this Court on February 5, 1999 alleging three claims under Title VII for sexual harassment, constructive discharge, and pattern and practice sexual harassment, and three state law claims for intentional infliction of emotional distress, "assault and battery", and defamation. Several motions were submitted by both parties and resolved by the Court, and Plaintiff is left with claims for sexual harassment, constructive discharge, and defamation against Defendant Xanadu, and claims for "assault and battery" and defamation against Defendant Dabney. Xanadu timely filed a motion for summary judgment as to all counts against it which is discussed below.

### DISCUSSION

#### I. Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Haavistola v. Community Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir.1993); Etefia v. East Baltimore Comm. Corp., 2 F.Supp.2d 751, 756 (D.Md.1998). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. See Deans v. CSX Transportation, Inc., 152 F.3d 326, 330–31 (4th Cir.1998); Beale v. Hardy, 769 F.2d 213, 214 (4th Cir.1985). To defeat such a motion, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. See Anderson, 477 U.S. at 252, 106 S.Ct. 2505; Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327, 106 S.Ct. 2548 (citations omitted). In determining whether genuine and material factual disputes exist, the Court has reviewed the parties' respective memoranda and the many exhibits attached thereto, construing all facts and all reasonable inferences drawn therefrom, in the light most favorable to the non-movant. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

#### II. Sexual Harassment Under Title VII

Plaintiff, Marie Thomas, is seeking relief from her employer, Defendant Xanadu, under Title VII for sexual harassment engaged in by Defendant Roy Dabney. Count I of Plaintiff's Complaint sets forth a claim for sexual harassment, and it also alleges that she was constructively discharged. Count II purports to state a separate claim for constructive discharge under Title VII. "A constructive discharge occurs when an employer creates intolerable working conditions in a deliberate effort to force the employee to resign." Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994). Whether such conditions are intolerable is assessed by an objective "reasonable person" standard. See Munday v. Waste Management of N. Am. Inc., 126 F.3d 239, 244 (4th Cir.1997), cert. denied, 522 U.S. 1116, 118 S.Ct. 1053, 140 L.Ed.2d 116 (1998). Count II, however, is based entirely on the Title VII claims of harassment encompassed within Count I. As

such, the Court's determination on Count I will also govern the viability of Count II.

■ Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Such unlawful discrimination may manifest itself in the form of demands for sexual consideration in exchange for tangible employment benefits (quid pro quo), or conduct so offensive that it creates an abusive workplace (hostile work environment). The former concerns the Court in this matter because quid pro quo sexual harassment was not alleged by the Plaintiff. Sexual harassment based on a hostile work environment exists where one makes sexual advances or otherwise creates a sexually suggestive workplace atmosphere that the claimant finds unwelcome. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir.2000). Four elements of sexual harassment must be established in order for Plaintiff to prevail. To prove a hostile environment work claim under Title VII, a Plaintiff must show (1) that the harassment was unwelcome, (2) that she was harassed because of her sex, (3) that the harassment was sufficiently severe and pervasive to alter the conditions of employment, and (4) that some basis exists for imputing liability upon her employer. *See Smith*, 202 F.3d at 243. To establish the existence of a hostile work environment, Thomas must prove that her workplace was "both objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that [she] in fact did perceive to be so." *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Each element of the claim will be discussed below.

■ Viewed in the light most favorable to the Plaintiff, the record proffers an array of evidence that a reasonable jury could find satisfies the first two elements stated above. The alleged harasser is Roy Dabney, supervisor of several BET Soundstage employees including Plaintiff. *See Xanadu's Dep.*, at 51. In Plaintiff's Complaint, she alleges Roy Dabney's actions towards her were sexual in nature and those actions were at all times unwelcome. To support these allegations, Plaintiff provided witness testimony and produced her own "anonymous" letter which corroborates her claim. *See Plaintiff's Response*, Exs. 1E and 9, respectively. Both Plaintiff's testimony and the anonymous letter she claims to have sent to Mr. Rosenthal allege that Roy Dabney, on several occasions touched her upper thigh and attempted to undress her on two occasions while Dabney and Plaintiff were working at the restaurant. *See Complaint Letter*, Defendant's Motion, Ex. E. Plaintiff perceived Dabney's actions to be offensive as indicated by her rejection of many sexual advances by Dabney and her attempt to avoid contact with him. *See Plaintiff's Answers to Interrogatories*, Plaintiff's Response, Ex. 2. The circumstances of the conduct as presented in the record show that the alleged harassment ensued because Plaintiff is a woman. Furthermore, there is no doubt that the alleged comments and conduct, such as pulling down her pants, and unzipping her clothing could be offensive to a reasonable woman, let alone Ms. Thomas. While Defendant Xanadu's motion does not attack Plaintiff's case as to these two elements of a hostile environment case, Dabney has denied the conduct alleged by Plaintiff. Thus, the Court finds Plaintiff created a genuine dispute of material fact as to the first two elements of a hostile environment sexual harassment claim.

■ Likewise, the Court finds the record to contain sufficient corroborating evidence to support the allegations of the third element of severe and pervasive conduct. Both the Supreme Court and the Fourth Circuit have instructed courts that

the determination as to whether the plaintiff's harassment was sufficiently severe and pervasive is to be made by considering the totality of the circumstances giving rise to the claim. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir.1994). These circumstances include: (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether it unreasonably interferes with an employee's work performance. *Id.* The Court has made it clear that the alleged conduct must be extreme to amount to a change in the terms and conditions of employment. *See Faragher*, 524 U.S. at 788, 118 S.Ct. 2275.

Although Plaintiff relied predominantly on her own deposition testimony of the events at issue, she does support her claims with evidence that she notified Fred Rosenthal, a Xanadu upper level manager and Owner, of the harassment through an anonymous letter. *See Plaintiff's Response*, Ex. 1E. The letter, at the very least, raised the inference that something was awry, namely sexual harassment which was severe and pervasive, during the period of her employment. The alleged actions of Dabney, if true, could be evidence of harassment under an analysis of the totality of the circumstances. In both her letter and her interrogatories, Plaintiff alleges that Dabney sexually harassed her from June/July 1997 until the time of her resignation on June 6, 1998. *See Plaintiff's Dep.*, at 143–44. Plaintiff further alleges Dabney routinely rubbed her upper thigh without permission—approximately 3–4 times a week. *See id.* at 160. Thus, the record contains sufficient evidence of the consistency of the thigh rubbing incidents which could satisfy the frequency element.

Enduring the persistent and unwelcome rubbing of one's thigh absolutely falls outside of what the Supreme Court would consider "the ordinary tribulations of the workplace." *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275. In *Faragher*, the Court held that complaints which allege the "ordinary tribulations of the workplace" such as the sporadic use of abusive language, gender related jokes, and occasional teasing needed to be filtered out of the judicial process. *Id.* Plaintiff's account of Dabney's actions if found to be true, constitute conduct more severe and pervasive than the sporadic use of abusive language, gender related jokes, and occasional teasing as the actions alleged were physical as well as verbal. Plaintiff alleges that she suffered routine touching of her upper thigh, groping, sexually suggestive comments, the spreading of slanderous statements of her alleged homosexuality, and embarrassing disrobing attempts culminating with the pulling down of her pants by Dabney. Another employee testified that she witnessed an occasion in which Dabney unzipped Plaintiff's shirt, exposing her breasts. *See Joy Burnette's Dep.*, at 94–96. Thus, a reasonable person in Plaintiff's position could view the conduct as physically threatening and humiliating. Moreover, when a person, such as the Plaintiff in this case, must spend her entire workday monitoring a co-worker's whereabouts to avoid being fondled by him, it is clear that such conduct unreasonably interferes with the employee's work performance. Whether the harassment was sufficiently severe and pervasive is "quintessentially a question of fact" for the jury. *Beardsley v. Webb*, 30 F.3d 524, 530 (4th Cir.1994). Thus, this third element of the claim along with the first two elements previously discussed must be considered by a jury.

■ The fourth and final element of a hostile environment claim is that some basis exists for imputing liability upon Xanadu, Plaintiff's employer. *See Smith*, 202 F.3d at 243. At the time of the *Smith* trial decision, the Fourth Circuit's controlling precedent on this issue was that a Plaintiff was required to show the employer had

actual or constructive knowledge of the existence of a hostile working environment and failed to take remedial action. *See Andrade v. Mayfair Management, Inc.*, 88 F.3d 258, 261 (4th Cir.1996). However, in 1998, the Supreme Court decided two cases involving vicarious liability in sexual harassment suits. *See Faragher*, 524 U.S. at 775, 118 S.Ct. 2275; *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The Supreme Court held that an employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. *See Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 742, 118 S.Ct. 2257. Whenever sexual harassment by a supervisor takes the form of a "tangible employment action" against a subordinate, vicarious liability will be imposed on the employer. *Id.*

■ In cases where the supervisor's harassment does not include a "tangible employment action," an employer may still be subject to vicarious liability to a victimized subordinate. When no tangible employment action is taken, however, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. *See Ellerth*, 524 U.S. at 745, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 808, 118 S.Ct. 2275; *Brown v. Perry*, 184 F.3d 388 (4th Cir.1999). The defense consists of two necessary prongs: (1) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Id.* In the instant case, Xanadu asserts that no tangible employment action occurred and it has satisfied both prongs of the affirmative defense. The Court will now pass upon both arguments.

### A. *Tangible Employment Action*

A tangible employment action constitutes a significant change in employment status. *See Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257. "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguishable title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* (*quoting Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir.1993)). In the instant case, Plaintiff has presented no evidence that demonstrates she was discharged, demoted, reassigned to an undesirable position, or received any reduction in her wages or benefits. In fact, Plaintiff testified she did not receive any loss in pay, position, or duties from the time of her anonymous letter to the time she resigned. *See Plaintiff's Dep.*, at 244–45. Furthermore, Plaintiff does not allege the sexual harassment took the form of a tangible employment action. Thus, in accordance with the ruling in *Faragher* and *Ellerth*, there were no acts by any employees of Xanadu that changed Plaintiff's employment status by any of the means listed above or otherwise contemplated by the rule.

■ Plaintiff, however, presents another argument. Although Plaintiff did not raise the claim of retaliation in her complaint as a basis of relief, she presents it in her response to the instant motion in an effort to show that retaliation constitutes a tangible employment action. To establish a claim of retaliation, Plaintiff must show (1) she engaged in a protected activity, (2) her employer took an adverse employment action, and (3) a causal connection exists between the two. *See Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir.1998). Thomas engaged in a protected activity—the reporting of sexual harassment to her superiors. Thus, she satisfies this first element of retaliation. As to whether Xanadu took an adverse

action, Plaintiff argues that following the submission of her complaint letter, she suffered an adverse action in the form of retaliatory disciplinary write-ups and the loss of job security enjoyed by "for cause" employees, thereby reducing her to an "at-will" employee. An employment contract of indefinite duration is considered a contract for employment "at-will," and the relationship may be terminated without "cause" by either party at any time. The doctrine is subject to the limitation that an employee may not be fired for a reason that clearly violates Maryland public policy. *See Kramer v. Mayor and City Council of Baltimore*, 124 Md.App. 616, 723 A.2d 529, 533 (1999). Defendant's employee handbook specifically sets forth the point at which an employee is employed on an at-will basis. *See Employee Handbook, Plaintiff's Response*, Ex. 1, at 13–14. The handbook states that every new employee (three weeks or less) may either quit or be terminated at any time without notice. *Id.* Thus, the new employees are considered at-will employees for the first three weeks of employment. Plaintiff was not a new employee at the time of the alleged "retaliation." Rather, by May 29, 1998—the alleged commencement of the retaliation—she had worked at the restaurant for almost 1½ years, and was thus a "for cause" employee. The disciplinary process is an incremental one, and the termination of non-probationary employees such as Thomas, could only be ordered for specific reasons, such as tardiness or a "no call/no show for a scheduled shift." *See Employee's Handbook, Defendant's Mtn.*, Ex. C, at 13. Thus, Plaintiff cannot make the claim that her status was reduced to that of an at-will employee, thereby showing a tangible employment action.

▮ While Plaintiff argues the receipt of several warnings from Xanadu on work-related matters followed the submission of her complaint to upper management, she presented no evidence of the imposition of any significant disciplinary action such as suspension, termination, loss of pay, or loss of duties. Likewise, the record does not include persuasive evidence of a causal link between the protected activity and any adverse employment action. Moreover, Xanadu has presented a legitimate reason for the disciplinary write-ups. The record indicates that it was standard procedure for an employee who was tardy and failed to fill out a substitution book to ensure that her shift was covered, to receive a warning notice. *See Plaintiff's Dep.*, at 102, 103–09, 254, 257–63. Thus, it is undisputed that her failure to adequately cover her shift was a violation of company policy. The reprimands were entirely unrelated to her complaint of sexual harassment. Plaintiff cannot establish a claim for retaliation, and thus has not shown that she suffered a tangible employment action. As such, Xanadu is entitled to assert the affirmative defense to liability.

## B. *Affirmative Defense to Liability*

As stated previously, there are two prongs that Xanadu must establish in order to utilize the defense. Xanadu must prove that (1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (2) the Plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. An employer's adoption of an effective anti-harassment policy is an important factor in determining whether it exercised reasonable care to prevent any sexually harassing behavior. The Supreme Court noted that "[w]hile proof that an employer had promulgated an anti-harassment policy with complaint procedure[s] is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257.

Xanadu presented evidence that it had in place a policy against sexual harass-

ment. The parties do not dispute this fact. *See Plaintiff's Dep.*, at 92. The policy includes some procedures for employees to report offending behavior. Although the existence of an anti-harassment policy is not dispositive of the first element being satisfied, a suitable policy that provides reasonable assurances that such conduct will be prevented and an effective mechanism is in place to address all complaints will suffice. *See Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257. In the instant case, the Court cannot find as a matter of law that such a comprehensive and effective policy exists. Xanadu has promulgated a briefly-worded policy that was in place during Plaintiff's employment. The policy advises employees of the following:

> All complaints and occurrences regarding discrimination, including sexual or other harassment, should be promptly directed to your Supervisor. Should the activity continue, contact your General Manager or one of the Owners at the number listed above.

*See Employee Handbook, Def.'s Mtn.*, Ex. C, at 12. All employees, including Thomas received a copy of this policy and procedure in their employee handbook. *See Plaintiff's Dep.*, at 92. Defendant also presented evidence showing Plaintiff previously used the reporting mechanism contained in the employee manual and she had been satisfied with the manner in which the earlier complaint of sexual harassment was resolved by Defendant. *See Plaintiff's Dep.*, at 140–42; *Letter dated November 11, 1997*, Defendant's Motion, Ex. J. With regard to the facts in this case, following the writing of the complaint letter about Dabney's conduct, Xanadu wrote a letter of reprimand to Dabney which became a part of his file. In addition, owner Rosenthal made himself available to plaintiff for any further complaints. Thus, the employer's attempts at corrective action following the submission of the complaint letter appears to have been prompt. Yet, a prompt response to complaints of harassment made pursuant to an anti-harassment policy does not necessarily establish the first prong of the affirmative defense. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 664–65 (6th Cir.1999).

The Court cannot conclude as a matter of law that the policy was applied consistent with the laws against sexual harassment. Plaintiff, for example, represents that following one incident in which Dabney unzipped her dress, no one was present in the restaurant of higher rank than Mr. Dabney to which the conduct could be reported. · *See Plaintiff's Dep.*, at 189. Plaintiff argues the policy is defective and dysfunctional as it did very little to prevent and correct sexual harassment. An anti-harassment policy that an employer adopts must be "both reasonably designed and reasonably effectual." *Brown*, 184 F.3d at 396. A reasonable jury could find that Defendant's policy was not reasonably designed in that it failed to: (1) provide reasonable grievance procedures for which to institute an action, (2) provide lateral reporting alternatives for those offended by their immediate supervisors, (3) define or give examples of what constitutes sexual harassment, and (4) give direction as to how to proceed if upper management is the perpetrator of sexual harassment. Failure to include any assurance that the harassing supervisor could be bypassed when registering a complaint constitutes the failure to exercise reasonable care. *See Faragher*, 524 U.S. at 808, 118 S.Ct. 2275. Plaintiff testified she understood that if she was being harassed, she should report it to management and that if the harassment was done by someone in management, she knew to report it to someone higher. *See Plaintiff's Deposition*, at 95. Plaintiff's knowledge, however, may not be entirely dispositive of the reasonableness of Defendant's policy.

Additionally, there is some evidence that the policy was implemented with the use of intimidating interrogation tactics which could effectively discourage individuals from utilizing the complaint process. *See Plaintiff's Dep.*, at 227–228. *See also*

*Smith,* 202 F.3d at 245. In addition, the policy is silent as to any prohibition against retaliation or guarantees of confidentiality. Finally, the policy does not require supervisors who witness or have direct knowledge of sexual harassment to report it to the appropriate officials. *See Varner v. National Super Markets, Inc.,* 94 F.3d 1209 (8th Cir.1996). Defendant highlights the fact that Plaintiff effectively used the policy to report complaints about her ex-boyfriend who was an employee and had attacked her in the restaurant. The Court notes, however, that the incident involved inappropriate conduct by an employee (Plaintiff's ex-boyfriend) who was not a manager. Thus, the Court is not convinced that the policy and application of the policy is sufficient as a matter of law.

The record does indicate that following Plaintiff's submission of the "anonymous" complaint letter which Plaintiff identified as her own, an investigation ensued and Dabney received a formal reprimand, and was removed from his position as Plaintiff's immediate supervisor. *See Letter dated May 5, 1998,* Defendant's Mtn., Exhibit I. The response to Plaintiff's complaint letter could be deemed adequate, but the Court has reservations about the responses to several other incidents alleged by Plaintiff and other female employees. For example, when Plaintiff reported to Dabney that another co-worker, Ms. Morris was sexually harassing her, he responded by laughing. *See Plaintiff's Deposition,* at 193. Plaintiff also asserts that a similar inactive response was given when Plaintiff made her complaint of retaliation on June 1, 1998. Reportedly, it was common knowledge that members of management were having sex with subordinate employees. *See Coates Dep.,* at 151–52. In fact, the hostesses were given the unofficial title of "B.E.T. Bunnies" by members of management. *See id.* at 193. Some of the hostesses complained to Hostess Manager Coates, who in turn delivered the complaint to Dabney which was again met by laughter. *See id.* at 195. Although Thomas was not herself a hostess, such

evidence could be relevant to the general climate to which the policy should be made to address. Further, Coats herself reveals in her deposition testimony that she turned a wilful blind eye to harassing behavior of Roy Dabney despite her position as a manager. *See id.* at 107. Moreover, the record indicates that despite several complaints about his conduct by several women, Dabney claims he was never notified by Xanadu that the women had lodged complaints against him. *See Dabney,* at 34–45.

The absence or inadequacy of a response by the employer may invalidate the affirmative defense. Prior complaints about the same harasser may show the employer's knowledge or lack of reasonable care. *See Dees v. Johnson Controls World Servs., Inc.,* 168 F.3d 417, 422 (11th Cir. 1999). As early as April 1997, another employee, Dina Williams submitted a written complaint alleging that she had been hugged and touched by Manager Grant Williams and General Manger, Roy Dabney. *See Xanadu Dep.,* at 44–45; *Dabney Dep.,* at 2. There appears to be a dispute as to whether Dabney received any disciplinary action as a result of the complaint and investigation. Owner Fred Rosenthal alleges Dabney received a write-up in his file, yet Dabney maintains he was never written up. *See Xanadu Dep.,* at 45–46; *Dabney Dep.,* at 26–28. In the instant case, Thomas presents sufficient evidence that Xanadu failed to use reasonable efforts to prevent Dabney's harassment. Xanadu had an anti-harassment policy that Thomas was familiar with. However, Thomas alleges and presents evidence that the policy was "otherwise defective or dysfunctional." *See Smith,* 202 F.3d at 245 (finding that plaintiff established a genuine dispute of material fact by alleging employer's policy was defective and dysfunctional and by alleging that employer did not take steps to prevent sexual harassment other than its policy). The record contains statements by Plaintiff and other employees that managers discouraged

complaining, and that Dabney "was famous for ... getting people fired." *See Coats Dep.,* at 102. In a recent unpublished opinion construing the first prong of the affirmative defense, the Fourth Circuit recognized several factors which precluded a finding for the employer on the first prong of the defense. *See Williams v. Spartan Communications, Inc.,* 210 F.3d 364 (4th Cir.2000) (unpublished disposition). Among the factors were: deposition testimony that supervisors did not receive training on sexual harassment, management's toleration of and participation in the harassment, evidence that an employee's complaint to a manager produced no corrective action, the close relationship between the harasser and other senior managers, and the anti-harassment policy's failure to assure those reporting harassment that they would not be subject to retaliation. On some level, the record in the instant case contains examples of these relevant factors. As such, it is not clear as a matter of law that Xanadu exercised reasonable care to prevent and correct promptly any sexually harassing behavior. As the Sixth Circuit reasoned about the policy of an employer in a racial hostile environment case, *Quanex:*

> Taking all of the circumstances of this case into consideration, we believe Quanex failed to carry [its] burden [on the first prong of the affirmative defense]. While, when viewed in isolation, giving a reprimand to [the harassing manager] might appear appropriate, [plaintiff] proffered evidence showing that [the manager], a supervisor with Quanex since 1970, regularly used racial epithets or made demeaning remarks about African–American co-workers, and treated African–American workers on his shifts more harshly than other workers. The record also contains substantial evidence showing that Quanex management was aware of the fact that [the manager] discriminated against African–American workers. Edward Copeland wrote a letter to management in 1992 complaining about [the manager's offensive racial] remark ... and had received no response.... Reasonable minds could surely have differed as to whether Quanex exercised reasonable care to correct racial harassment when it merely reprimanded a supervisor whose offensive conduct was known to management.

*Quanex,* 191 F.3d at 664.

This is not to say that Thomas has demonstrated that Xanadu cannot establish the first prong of the affirmative defense. A fact-finder may conclude that the anti-harassment policy and prompt corrective action do establish this prong. The determination of the adequacy of the policy and the employer's preventive and corrective measures is in the province of the fact-finder. The sufficiency of the provisions and application of the harassment policy must be assessed through an examination of the credibility of the witnesses involved. For example, the record is replete with allegations that three of the managers, including Dabney, were good friends and "looked out for each other." *See Coats Dep.,* at 101; *Plaintiff's Dep.,* at 165. Whether these allegations of bias in the system are meritorious must be determined by the jury. Defendant cites *Shaw v. AutoZone, Inc.,* 180 F.3d 806, 811–12 (7th Cir.1999) for the proposition that the first prong is satisfied as a matter of law when the employer has an anti-harassment policy that, inter alia, allowed victims of harassment to circumvent the chain of command. While the Court agrees that such a policy is appropriate, it is not clear that Xanadu's policy as written or applied did in fact allow such circumvention. Accordingly, the record reveals genuine disputes of material fact as to the adequacy of Defendant's policy and Defendant's ability to establish the first prong of the affirmative defense.

 As for the second prong of the affirmative defense which examines whether Plaintiff failed to utilize the employer's procedures, Xanadu argues Thomas's failure to utilize its complaint procedure is

conclusive proof of its fulfillment of this prong. Thomas, on the other hand, claims that the reason she only complained about some of the incidents is that she feared being fired if she reported the conduct, and it appears that she did not believe members of management would assist her in dealing with Dabney's conduct. The fear of retaliation or embarrassment is not sufficient to entirely relieve a plaintiff of her responsibility to take advantage of preventive or corrective opportunities provided by the employer. See Shaw, 180 F.3d at 813 ("Accordingly, we conclude that an employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under Ellerth to alert the employer to the allegedly hostile environment."). The Court notes, however, that an employer may be charged with constructive knowledge of sexual harassment, even if unreported, if the harassment was so broad in scope, and so permeated the workplace, that it must have come to the attention of someone authorized to do something about it. See Young v. Bayer Corp., 123 F.3d 672, 674 (7th Cir.1997).

A demonstration that an employee unreasonably failed to utilize the complaint procedure provided by the employer will normally suffice to satisfy the employer's burden under the second prong of the defense. See Ellerth, 524 U.S. at 745, 118 S.Ct. 2257. The record, however, shows Plaintiff wrote a letter detailing her grievances against Dabney and faxed it to Owners of the restaurant. Though she initially submitted it anonymously, she later informed management that she had written the letter. Defendant contends there is no dispute that Plaintiff failed to report any alleged harassment prior to the submission of the anonymous letter on April 23, 1998. See Plaintiff's Deposition, at 163–65, 177–79. The record indicates, however, that on other occasions, she reported Dabney's alleged harassing behavior. For example, following the pants pulling incident, she reported the occurrence to Senabella Gill-Laster, a store manager and apparently no

action was taken by the employer. See id. at 219. Thus, the Court cannot find that Plaintiff never availed herself of her employer's grievance procedures before the time of the letter. In fact, it appears that she followed the procedure set forth in the handbook by complaining to managers, general managers, and finally lodging a complaint to the Owners. Even if she had never reported the complaints, such failure to report the harassment would not necessarily insulate the employer from liability. See Martin v. Cavalier Hotel, Corp., 48 F.3d 1343, 1351 (4th Cir.1995). Applying common law agency principles, the Martin Court held that plaintiff's supervisor acted within the scope of his employment because the harassment took place in the workplace, during work hours, and was against an employee whom he had sufficiently successive authority over. Id. at 1352. Thus, the Court found the sexual assaults to be foreseeable enough to impute liability to the employer.

In the instant case, the facts are materially similar to those in Martin. First, most of the harassment allegedly occurred inside the workplace during work hours. As such, Xanadu would be more likely to reasonably anticipate the possibility of sexual harassment occurring on its own premises during normal work hours. Second, the absence of a strict hierarchical structure and complaint procedure at Xanadu makes Thomas's response more reasonable. Although Dabney is not the highest ranking employee, he was Plaintiff's supervisor and the first step in Plaintiff's grievance process. Apparently, he also held the position of a general manager, the person at the second step of the reporting chain. From a reading of the policy, it appears Plaintiff would first be required to report to Dabney, and if no change was effected, to report to an Owner. There did not appear to be an option to go directly to step two. This fact, coupled with the allegations from Plaintiff and other women about the generally sexually-charged environment among managers and subor-

dinates makes the Court reluctant to rule as a matter of law that Plaintiff's failure to avail herself of Defendant's policies and procedures should bar her recovery in this suit.

The factual evidence presented by Plaintiff tends to show attempts were made by Plaintiff to take advantage of the policies and procedures. The factual evidence presented by Defendant supports an assertion that she did not adequately take advantage of the preventive and corrective measures available to her. The Court, therefore, cannot find as a matter of law, that Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Furthermore, the Court finds that Thomas has presented a genuine issue of material fact that Xanadu had enough information for it to reasonably conclude that at least some acts of harassment had occurred. Consequently, Plaintiff's claim of constructive discharge is actionable and Defendant has failed to show as a matter of law that it should not proceed to a jury. Plaintiff provided ample direct and circumstantial evidence to show that Xanadu made her work conditions intolerable to the extent that she was forced to quit. As such, Plaintiff is entitled to have this issue proceed before a jury. As Defendant's argument for summary judgment on the state claims hinges upon a finding for it on the federal claims, the Court will also deny Defendant's motion as to the remaining state claims against it. Furthermore, the evidence presented by Plaintiff has created a genuine issue of material fact such that a reasonable jury could find for her on the defamation, assault, and battery claims. Therefore, there is a material factual dispute as to all remaining claims that must be resolved by a fact-finder, and the Court will deny Defendant's motion.

## CONCLUSION

Whether the alleged harassment actually occurred remains a genuine dispute of material fact as Dabney denies the allegations. The Court, however, believes that a reasonable jury could find for Plaintiff on this issue. Furthermore, the Court cannot at this time conclude that Defendant's harassment policy was sufficient as a matter of law or that Plaintiff unreasonably failed to avail herself of the policy. Accordingly, the Court will deny Defendant's motion for summary judgment on all remaining claims. A separate Order consistent with this opinion will follow.