Deborah A. KLINE, Plaintiff

v.

CERTAINTEED CORPORATION,
Defendant

No. CIV. AMD 01–2646.

United States District Court,
D. Maryland.

May 28, 2002.

Nathaniel David Johnson, Waldorf, MD, for plaintiff.

Jody Maier, Margolis Pritzker and Epstein, Towson, MD, for defendant.

## MEMORANDUM

DAVIS, District Judge.

The plaintiff, Deborah A. Kline, instituted this employment discrimination case against her former employer, defendant Certainteed Corporation, alleging sex discrimination on both disparate treatment and hostile work environment/sexual harassment theories, as well as retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Now pending are the parties' cross-motions for summary judgment. I have given careful attention to the parties' memoranda and exhibits, and a hearing is not needed. Local Rule 105.6. For the reasons explained below, I shall grant the defendant's motion for summary judgment and deny plaintiff's motion for summary judgment.

### I.

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Id.* at 248, 106 S.Ct. 2505. Summary judgment is also appropriate

when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir.1991). Of course, the facts, as well as justifiable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court, however, has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial. *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987).

## II.

Defendant is a manufacturer/distributor of building products. It operates out of a plant located in Hagerstown, Maryland. Defendant's employees, including Kline, are members of Local D–533, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forger and Helpers. Kline was employed at the defen-

dant's plant from 1983 through 1995 in various positions, including janitor, helper, operator, and stockroom clerk. She was laid off in 1995, and then rehired from layoff in May 1997, as a janitor. She worked as a janitor at the plant until June 18, 2001, when defendant terminated her employment as described below. Defendant's collectively-bargained progressive discipline process entails five levels of increasingly harsher sanctions for employee misconduct or non-performance, namely, (1) counseling; (2) verbal warning; (3) written warning; (4) suspension; and, (5) termination.

Although Kline seems to take an expansive view of what constitutes the material facts surrounding her claims, mentioning as she does events as far back as the 1993 to 1995 period, the factual and legal issues in the present case are framed by two employment discrimination charges Kline filed with the Equal Employment Opportunity Commission ("EEOC") in the spring of 2001. Kline filed her first charge on or about April 27, 2001. In that charge, she alleged that she was discriminated against on the basis of sex and that she was subjected to retaliatory actions. The events mentioned by Kline in connection with her April 27, 2001, discrimination charge include, but are not limited to, the following:

! she was assigned to work in an area where workers smoked on their breaks

! she reported safety hazards to her superiors

! she was "written up" for poor job performance, and alleged misconduct such as "clocking in early," on several occasions, whereas male employees were not "written up" for similar behavior

! her work shift was altered, allegedly because "the men" in the plant would stop working when she was present, but the men were not penalized, and the male janitor's hours were not changed

! she was allowed fewer overtime hours than the male janitor.

The EEOC issued Kline a right to sue letter on May 31, 2001, as to this charge.

In fact, at the time Kline filed her April 27, 2001, charge of discrimination, she had been disciplined on three occasions by defendant pursuant to the progressive discipline policy and procedures. Specifically, the following disciplinary steps had been taken. First, on November 9, 2000, Kline was *counseled* for inadequate cleaning, and on the same day she received a *verbal warning* for time card violations, i.e., forgetting to "clock in." She and her union representative accepted each of these disciplinary actions as having been appropriately imposed. A third disciplinary sanction resulted from events occurring on or about February 9, 2001; Kline received a *written warning* for taking excessive breaks. Although she and the union had the right to grieve the written warning, they did not do so.

On May 15, 2001, several weeks after she filed her April 27, 2001, discrimination charge with the EEOC, defendant again notified Kline that she would be disciplined, i.e., suspended for three days, a fourth tier sanction. Defendant alleged that on May 11 and May 13, 2001, Kline was observed taking breaks in unauthorized areas, and that she had been specifically warned about this practice in March 2001. Kline grieved the suspension; ultimately, the union accepted the suspension in July 2001.

On or about June 12, 2001, Kline filed her second charge with the EEO, this time alleging solely retaliation. In this charge, she alleged that her supervisor, Jeff Kendall, and another man, Ambarish Dave, the plant superintendent, were taking adverse employment actions against her because she "would not sleep with [Kendall]" and because Dave had "a vendetta" against her

"because she is a woman." The EEOC issued Kline a right to sue letter on July 16, 2001, as to this charge.

In the meantime, during the pendency of the grievance proceedings on the three-day suspension imposed on May 15, 2002, the ultimate sanction; termination, was meted out to Kline as a result of further disciplinary action arising out of events of Friday, June 15, 2001, and Monday, June 18, 2001. Specifically, Kline was alleged to have (1) failed to clean up the main plant conference room after a meeting that Friday, during which food was delivered and left partially consumed in the conference room; (2) falsified a work order in connection therewith; and, (3) given a false explanation for her failure to clean the room.

The record establishes the following facts as undisputed. Kline's duties included cleaning the conference room after the meeting concluded on Friday, June 15, 2001. When the conference room was next slated for use on the morning of Monday, June 18, 2001, it was "a mess" and, according to the janitor who cleaned it on Monday morning (Kline's co-worker), it "smelled very badly." As a result of an immediate investigation, defendant concluded that Kline had failed to clean the room as she should have as a part of her job responsibilities on Friday.

Thereafter, in consequence of a "hearing" at which Kline was accompanied by union representatives, the defendant concluded, partly on the basis of Kline's own explanation as to how she "may have forgotten" to clean the room (although Kline denied then and denies now, apparently, that she made any such admission), that Kline falsified her explanation for not cleaning the room, and indeed, had falsified a work order reflecting that she did clean the room on June 15, 2001. Defendant therefore terminated Kline's employment, effective June 18, 2001. The griev-

ance/arbitration process provided for in such cases under the applicable collective bargaining agreement remains under way even as this discrimination action is proceeding. Significantly, Kline was replaced by a female who was recalled from lay-off status, as was Kline when she was rehired in 1997.

In the case *sub judice*, Kline contends that Kendall and Dave are the architects of the above-described disciplinary history and that each has been motivated by an apathy towards her based on sex, and by her opposition to their discriminatory actions. Other than her own subjective beliefs and uncorroborated assertions about Kendall's desire to have sex with her during her earlier tenure with the company, and his vengeful intentions as a result of her rebuffs of his attempts, Kline has marshaled no evidence that Kendall harbored such an animus towards her. For example, in her memorandum, Kline cites to the deposition of a union official, Dennis Hose, and asserts that Hose "counseled" Kendall as a result of his sexually inappropriate behavior towards her. *See* Pl.'s Opening Mem. at 2–3, citing Hose Dep. at 22. But Hose says no such thing in his deposition. Similarly, Kline asserts that she was involved in sexual discrimination charges asserted by another employee against Kendall in 1995, but there is no record of any such charges, and the very employee who is alleged by Kline to have instituted such charges denies that she did so.

As to Dave, Kline alleges that Dave blamed her for some goofing off by the men in the plant, and thus engineered a change in her working hours, and otherwise developed an animus towards her. As defendant points out, however, Kline readily admitted that she "was all the time cooking for the guys" and that, when she would take a break, "the guys would take a break with [her]." She was "very close"

with "the guys" and "the guys" regarded her as "their sister, their mother, their best friend." Beyond this, Kline ascribes gender animus to Dave on the basis of several uncorroborated accounts of him "following her around" and "taking pictures" of her. In any event, Kline's suspension and termination were approved at levels of management above Kendall and Dave.

### III.

#### A.

■ Defendant contends that Kline cannot challenge her termination under any Title VII theory because she failed to file a *third* charge of discrimination with the EEOC after her employment was terminated. I must reject this contention. Despite the rather rambling (and in some respects, simply fantastic) nature of the narratives which accompanied Kline's April 27, 2001, and June 12, 2001, charges of discrimination, it is reasonably clear that Kline was contending therein that she was being subjected to Certainteed's progressive discipline process as a result of sex discrimination and retaliation. So viewed, Kline's termination was simply the final stage of that process, albeit a stage that was reached only on account of new allegations of wrongdoing leveled against her after she had filed her discrimination charges. Manifestly, a reasonable interpretation of her two discrimination charges read together (as they must be) compels the conclusion that it was her intention to assign as a cause of all of the "employment injuries" she had suffered and would likely suffer pursuant to the progressive discipline process was her supervisors' unlawful discriminatory and retaliatory motivations.

#### B.

Under the facts and circumstances of this case, Kline's intentional discrimination

and harassment claims seem to me to amount to a single claim. That is to say, as defendant contends, the only cognizable adverse employment action present in this case is Kline's termination of employment. (Kline and her union have accepted her three-day suspension issued at stage four of the progressive discipline process (imposed because Kline took work breaks in unauthorized locations despite earlier warnings not to do so), and have simply continued to pursue only her grievance in respect to the termination of employment. In addition, the alleged loss of overtime as a result of a change in her work schedule is not supported by the facts in the record.)

■ Thus, as Kline was replaced by a woman when her employment was terminated in June 2001, and in view of the totality of the facts in the record taken as a whole, I am constrained to conclude that Kline fails to establish a prima facie case of intentional sex discrimination in respect to her termination. Accordingly, Kline's theories must be that her termination: (1) was a "tangible employment action" in consequence of sexual harassment, rather than disparate treatment on the basis of sex, *see generally Church v. Maryland,* 180 F.Supp.2d 708, 727–28 (D.Md.2002) (discussing, *inter alia, Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)), or, in the alternative, (2) was an adverse employment action taken in retaliation for her opposition to discriminatory/harassing treatment. I shall examine each of these theories in turn.

### 1.

■ To survive summary judgment as to her hostile work environment claim, Kline must project evidence sufficient to establish the following four elements:

(1) unwelcome conduct,

(2) based on [plaintiff's] gender,

(3) sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment, and

(4) some basis for imputing liability to [defendant].

*Matvia v. Bald Head Island Mgmt., Inc.,* 259 F.3d 261, 266 (4th Cir.2001) (citing *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 241(4th Cir.2000)). As reflected in the above recitation of facts in the light most favorable to Kline, in this case, there is not even a scintilla of evidence that Kline has been subjected to the kind of severe or pervasive harassing actions which are cognizable under Title VII and which are the *sine qua non* of a viable hostile environment claim. Kline does not come close to projecting substantial evidence which shows that the work environment was "so polluted with sexual harassment that it altered the terms and conditions of her employment." *Anderson v. G.D.C., Inc.,* 281 F.3d 452, 458–59 (4th Cir.2002). (For instance, although Kline argues that "[v]arious employees observed [Kendall] photographing ... Kline ... several times," the record citation for this assertion is not to the affidavits or depositions of those alleged employees, but to *Kline's* deposition. *See* Pl.'s Mem. at 7. Morever, the record is utterly devoid of evidence—apart from Kline's assertion—that Kendall attempted "to sleep with" Kline and was rebuffed within the period covered by her earliest charge of discrimination. This record is a *paradigm* of a failure of proof. *See Evans v. Technologies Applications & Service,* 80 F.3d 954 (4th Cir.1996).)

To the extent that Kline found her superiors unkind or, as she argues explicitly, to the extent she found herself under their "harsh scrutiny," Pl.'s Mem. at 3, with superiors ready to impose discipline for

every infraction, large or small, she fails to support her claims with evidence that is probative of actionable harassment:

Since supervision and race discrimination are very different, the case law makes clear that a discriminatory animus cannot be inferred from the day-to-day conduct of supervisors that [Kline] may deem inconvenient, inconsiderate or insufficiently solicitous. *See Spence v. Maryland Cas. Co.*, 803 F.Supp. 649, 670 (W.D.N.Y.1992), *aff'd*, 995 F.2d 1147 (2d Cir.1993) (holding that intimidating behavior of plaintiff's manager may be evidence of impersonable and overly aggressive manager, but without more it does not demonstrate that his actions were motivated by a discriminatory animus).

*Copeland v. Sears, Roebuck and Co.*, 25 F.Supp.2d 412, 418 (S.D.N.Y.1998); *see also Chika v. Planning Research Corp.*, 179 F.Supp.2d 575, 587 (D.Md.2002). This reasoning applies fully to Kline's claim of sexual harassment. Accordingly, defendant is entitled to judgment as a matter of law on that claim.

### 2.

■ To establish a prima facie case of retaliation, a plaintiff must prove that "(1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action." *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir.2001) (citing *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir.1997)). Once the plaintiff has established a prima facie case, the defendant has the burden of producing evidence of a legitimate nonretaliatory reason for the adverse action. *Munday v. Waste Mgmt. of N. America, Inc.*, 126 F.3d 239, 242 (4th Cir.1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985)), *cert. denied* 522 U.S. 1116, 118 S.Ct. 1053, 140 L.Ed.2d 116 (1998). If the defendant raises a genuine issue of fact, then the plaintiff bears the burden of proving retaliation by demonstrating that the employer's reason is pretextual. *Id.* (citing *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir.1994)); *Obi v. Anne Arundel County*, 142 F.Supp.2d 655, 672 (D.Md.2001), *aff'd*, 28 Fed.Appx. 333 (4th Cir.2002). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (discussing test for the sufficiency of evidence of pretext in discrimination claims).

■ The first element of Kline's prima facie case is clearly met by proof that she filed two discrimination charges. The record also supports the inference that she also may have complained to her superiors about, i.e., opposed, her alleged discriminatory treatment. *See Thomas v. BET Soundstage Restaurant*, 104 F.Supp.2d 558, 563 (D.Md.2000). The second element is clearly satisfied in that Kline's employment was terminated.

■ "To survive summary judgment ... [Kline] must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir.1998). "To satisfy the third element, the employer must have taken the adverse employment action because the plaintiff engaged in a protected activity." *Id.* The Fourth Circuit has held "that evidence that the alleged adverse action occurred shortly after the employer became aware of the protected activity is sufficient to 'satisfy the less onerous burden of making a prima facie case of causa-

tion.'" *Id.* at 657 (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989)). In sum, therefore, I conclude that Kline has adequately projected evidence sufficient to establish that a causal connection exists between her protected activity and the termination of her employment in June 2001.

■ However, even assuming that Kline has established a prima facie case of retaliation, an unrebutted legitimate, non-discriminatory reason supports defendant's decision to terminate Kline's employment in June 2001. The record here establishes clearly and convincingly that defendant genuinely believed that Kline not only failed to perform her assigned tasks, but that she lied to her superiors in connection with their investigation of her failure to clean the main conference room at the plant after the June 15, 2001, meeting. Frankly, given the corroborating testimony of Kline's own union official as to Kline's statements, the evidence seems irrefutable. As a matter of law, therefore, Kline has failed to generate a dispute of material fact as to the issue of pretext in respect to her claim of retaliatory discharge. That is to say, no reasonable jury could reasonably conclude by a preponderance of the evidence that her employment was terminated in retaliation for her protected activity. Accordingly, defendant is entitled to judgment as a matter of law as to the claim of retaliation.

## IV.

For the reasons set forth, judgment shall be entered in favor of the defendant.

## ORDER

In accordance with the foregoing Memorandum, it is this 28th day of May, 2002, by the United States District Court for the District of Maryland, ORDERED

(1) That the defendant's motion for summary judgment is GRANTED; and it is further ORDERED

(2) That plaintiff's motion for summary judgment is DENIED; and it is further ORDERED

(3) That JUDGMENT IS ENTERED IN FAVOR OF DEFENDANT AGAINST PLAINTIFF; and it is further ORDERED

(4) That the Clerk shall CLOSE THIS CASE and TRANSMIT copies of this Order and the foregoing Memorandum to the attorneys of record.