Tortica ANDERSON, Plaintiff–Appellant,

v.

G.D.C., INCORPORATED, d/b/a Unlimited Trucking, Incorporated, Defendant–Appellee.

Tortica Anderson, Plaintiff–Appellee,

v.

G.D.C., Incorporated, d/b/a Unlimited Trucking, Incorporated, Defendant–Appellant.

Nos. 01–1086, 01–1118.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 2001.

Decided Feb. 25, 2002.

**ARGUED:** Annette Kay Rubin, Leesburg, Virginia, for Appellant. Tina Marie LePoer, Manassas, Virginia, for Appellee.

Before WILKINS and MICHAEL, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed in part, reversed in part, vacated in part, and remanded by published opinion. Judge WILKINS wrote the opinion, in which Judge MICHAEL and Senior Judge HAMILTON joined.

## OPINION

WILKINS, Circuit Judge.

Tortica Anderson brought this action against her former employer, G.D.C., Incorporated (G.D.C.), alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C.A. §§ 2000e–2(a)(1), 2000e–3(a) (West 1994). Anderson now appeals rulings of the district court granting judgment as a matter of law to G.D.C. on the retaliation claim and denying her motion for a new trial on the issue of punitive damages. She also appeals the amount of attorneys' fees awarded by the court. G.D.C. cross-appeals the denial of its motion for judgment as a matter of law on Anderson's discrimination claim. For the reasons set forth below, we affirm in part, reverse in part, vacate in part, and remand for further proceedings.

### I.

The facts, viewed in the light most favorable to Anderson, *see Sales v. Grant*, 158 F.3d 768, 775 (4th Cir.1998), are as follows. G.D.C. is a trucking company located in Woodbridge, Virginia. Anderson began employment with G.D.C. as a dump truck driver in November 1996. While employed at G.D.C., Anderson was supervised by Donald Cooper. Cooper was the general manager and dispatcher for G.D.C., and he possessed authority to hire, fire, and discipline drivers.[1]

---

1. Cooper was also a vice-president of G.D.C., but evidence presented at trial indicated that the title was nominal.

When Anderson interviewed for the position, she informed G.D.C. that because her son's day-care center did not open until 6:30 a.m., she could not report for work until 6:45. Although the normal time for G.D.C. employees to begin work was 5:00, Anderson was informed that arriving at 6:45 would be "fine" and that "there was always work to do." J.A. 28–29. Anderson spent approximately two weeks training with other G.D.C. employees. After completing her training, Anderson worked as a driver for six days, for a total of 39.5 hours. Work as a dump truck driver was not always available for Anderson by the time she came in, but when it was not, Cooper assigned Anderson to other tasks.

Throughout Anderson's tenure at G.D.C., she was barraged with comments of a sexual nature. The worst perpetrator was Cooper, who made vulgar comments regarding Anderson's breasts and buttocks on a daily basis and who repeatedly stated that he "heard black women had the best p* * *y" and that "you hadn't f* * *ed until you have been with a black woman." *Id.* at 33. Cooper also told Anderson that if he ever caught her driving on a certain road, he "would f* * * [her] in the a* *," *id.* at 31, and that "all [Anderson] needed was a good f* * * and [she] wouldn't be so mean," *id.* at 33. Twice, Cooper touched Anderson's hand in a suggestive manner when she handed him her paper-work. On one occasion, Cooper paged Anderson and inputted a telephone sex line as the response number. Anderson called the number believing it to be her son's day-care; when she returned to the dispatch trailer, she found Cooper and several drivers laughing at her.

The off-color comments did not come solely from Cooper. Male G.D.C. drivers made numerous comments regarding Anderson's buttocks and stated within Anderson's hearing that they "would like to f* * * [her] in the a* *." *Id.* at 37. Male G.D.C. drivers also commented that they would like to perform oral sex on Anderson. Further, they noted that Anderson wore red lipstick and stated that they "would like to see the red ring around their d* * *" and that they bet Anderson "could suck a good d* * *." *Id.* As much as possible, Anderson tried to avoid using the employee restroom located in the dispatch trailer because other drivers would make off-color comments when she did so. Once while Anderson was in the restroom, another driver commented, loudly enough for Anderson to hear, that he "would like to take a bath in [her] hot p* * *." *Id.* at 38.

Anderson repeatedly protested the sexual comments directed toward her. Fearful of losing her job, however, she attempted to "candy coat" her objections. *Id.* at 33. At some point, Anderson complained to a coworker, who then spoke to Cooper. Cooper then responded to Anderson, telling her that she "might as well get used to it" and that "[t]hat was the way of G.D.C." *Id.* at 34.

In mid-December, Anderson asked Cooper for assistance with a question regarding her paperwork. In the guise of assisting her, Cooper came up behind Anderson and pressed his penis into her buttocks ("the touching incident"). Anderson whirled around and told Cooper that she would "cut his f* * *ing throat if he ever did it again." *Id.* at 40. When Anderson arrived for work on the following workday, Cooper told her that no work was available that day and that, in the future, she should call ahead to find out if work was available. The following week, each time Anderson called, Cooper told her that there was no work available for her. Thereafter, Cooper failed to return Anderson's calls. Frustrated, Anderson contacted Ronald

Cooper (Ronald), Cooper's brother and a vice-president of G.D.C., and explained the situation. Ronald told her that "work was slow" and that she should speak with Cooper.[2] *Id.* at 42. Anderson continued to call Cooper for another two weeks, with no success. During this period, Anderson observed G.D.C. trucks on the road and saw employment advertisements that G.D.C. had placed in the local newspaper.[3] Anderson ultimately abandoned her efforts to work at G.D.C. and obtained employment elsewhere.

After pursuing her administrative remedies, Anderson filed this action alleging that she had been the victim of a hostile environment and of retaliation by G.D.C. Following the presentation of Anderson's case, the district court granted G.D.C.'s motion for judgment as a matter of law as to the retaliation claim but denied G.D.C.'s motion as to the hostile environment claim. Additionally, the court refused to submit the issue of punitive damages to the jury. The jury returned a verdict in favor of Anderson and awarded her $15,000 in compensatory damages.

In post-trial motions, Anderson requested a new trial on punitive damages and an award of attorneys' fees. The district court denied the motion for new trial, reasoning that the evidence did not support an award of punitive damages. The court did award attorneys' fees, but in an amount substantially less than the amount Anderson had claimed. The district court reduced the "lodestar" figure by 80 per-

cent to account for the great difference between Anderson's requested damages (not less than $100,000) and the award actually made by the jury ($15,000).

Both parties now appeal. Anderson appeals the granting of G.D.C.'s motion for judgment as a matter of law on the retaliation claim, the denial of her request for an instruction on punitive damages, and the amount of attorneys' fees awarded. G.D.C. cross-appeals the denial of its motion for judgment as a matter of law on Anderson's hostile environment claim.

## II.

██ We begin with Anderson's appeal of the grant of judgment as a matter of law on her retaliation claim, a ruling we review de novo. *See Anderson v. Russell,* 247 F.3d 125, 129 (4th Cir.2001). We must view the evidence in the light most favorable to Anderson, the non-movant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility. *See Sales v. Grant,* 158 F.3d 768, 775 (4th Cir.1998). Judgment as a matter of law is proper only if "there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

██ Title VII prohibits discrimination against any employee who "has opposed any ... unlawful employment practice" under Title VII. 42 U.S.C.A. § 2000e–3(a).

---

**2.** Ronald testified that he told Anderson there was work available if she would arrive at 5:00 a.m. He did acknowledge, however, that Cooper would usually try to find something for an employee to do if no driving work was available.

**3.** Ronald testified that during the week following the touching incident, there was very little work available for dump truck drivers because of the Christmas holiday and poor

weather. However, the division of G.D.C. that provided trash-hauling services was still active, and a snow storm during the week of Christmas provided three days of work for those drivers qualified to do snow removal. Anderson was not qualified to do snow removal. Ronald further testified that G.D.C. constantly runs advertisements for new drivers, even when it is fully staffed, because of high employee turnover.

In order to establish a prima facie case of retaliation, an employee must present evidence that she engaged in protected activity, that her employer took an adverse employment action against her, and that there was a causal connection between the two events. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir. 1998). Once the plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse employment action. *See id.* at 442. If the employer succeeds in doing so, the plaintiff must then demonstrate that the employer's asserted reason is simply a pretext for retaliation. *See id.*

■ Anderson presented sufficient evidence to reach a jury on her retaliation claim. She testified that the next working day after she protested Cooper's physical touching of her (which G.D.C. does not dispute, and we assume without deciding, is protected activity), there was suddenly no work available for her and Cooper began requiring her to telephone him before coming in. This was in marked contrast to Cooper's behavior before the touching incident, when he had consistently assigned Anderson to other tasks when no driving work was available. Anderson further testified that although she called numerous times, Cooper either told her no work was available or failed to return her calls. During this period, Anderson observed G.D.C.'s trucks on the road and saw advertisements for new drivers in the newspaper. While G.D.C. presented testimony tending to explain the presence of the trucks and the newspaper advertisements, the existence of this evidence only serves to demonstrate that a triable issue of fact existed as to Anderson's retaliation claim.

## III.

We turn next to the challenges related to Anderson's hostile environment claim.

We first consider G.D.C.'s argument that the district court should have granted its motion for judgment as a matter of law on that claim. Since, as explained below, we conclude that the district court correctly denied G.D.C.'s motion, we then address Anderson's contention that the district court erred in refusing to submit the issue of punitive damages to the jury.

### A.

■ In prohibiting discrimination in the "terms, conditions, or privileges of employment," 42 U.S.C.A. § 2000e–2(a)(1), Title VII does not merely proscribe discriminatory acts that result in "tangible loss of an economic character," *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (internal quotation marks omitted). Rather, Title VII is also violated when an employee suffers sexual harassment that is "sufficiently severe or pervasive to alter the conditions of ... employment and create an abusive working environment." *Id.* at 67, 106 S.Ct. 2399 (internal quotation marks omitted). In order to prevail on a claim for sexual harassment amounting to a hostile work environment, a plaintiff must prove "(1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Conner v. Schrader–Bridgeport Int'l, Inc.*, 227 F.3d 179, 192 (4th Cir.2000).

■ G.D.C. disputes the adequacy of Anderson's evidence as to the third element, contending that Anderson did not present sufficient evidence for a rational jury to conclude that the environment at G.D.C. was so polluted with sexual harass-

ment that it altered the terms and conditions of her employment. Although the third prong of a hostile environment claim includes both objective and subjective components, *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), G.D.C. does not dispute that Anderson subjectively perceived the environment to be hostile. It argues only that the environment was not objectively hostile, *i.e.*, that a reasonable person would not have found the environment at G.D.C. to be hostile or abusive. *See id.* at 21, 114 S.Ct. 367.

In assessing whether a work environment is objectively hostile, a court must consider "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367. No single factor is determinative. *See id.* In assessing whether the environment was objectively hostile, a reviewing court must bear in mind that Title VII is "designed to protect working women from the kind of male attentions that can make the workplace hellish for women.... It is not designed to purge the workplace of vulgarity." *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir.1995); *see Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 773 (4th Cir.1997) (noting that "Title VII is not a federal guarantee of refinement and sophistication in the workplace").

The evidence was unquestionably sufficient to submit Anderson's hostile environment claim to the jury. Anderson was subjected, on a daily basis, to verbal assaults of the most vulgar and humiliating sort. Such evidence suffices to create a jury question regarding whether the harassing conduct was sufficiently severe or

pervasive to alter the terms and conditions of employment. *See EEOC v. R & R Ventures*, 244 F.3d 334, 340 (4th Cir.2001) (concluding that environment was hostile when employee was subjected to comments about her breasts and buttocks and inappropriate sexual remarks on a daily basis); *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir.1999) (concluding that district court erred in granting summary judgment for employer on hostile environment claim when plaintiff produced evidence of "a host of indignities" including "verbal abuse interlaced with sexual and racial epithets," "[r]ude sexual gestures," and "sexual insults ... written on the walls of the company restroom").

### B.

Anderson challenges the denial of her motion for a new trial on the issue of punitive damages. This court reviews the grant or denial of such a motion for abuse of discretion. *See Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1237 (4th Cir.1995). We conclude that the district court erred in denying Anderson's motion for new trial.

An award of punitive damages is allowed in a Title VII action when the plaintiff demonstrates that the defendant employer engaged in intentional discrimination "with malice or with reckless indifference to the federally protected rights of" the plaintiff. 42 U.S.C.A. § 1981a(a)(1), (b)(1) (West 1994); *see Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). In *Kolstad*, the Supreme Court rejected the rule that punitive damages are available when the discrimination is particularly egregious or severe. *See Kolstad*, 527 U.S. at 534–35, 119 S.Ct. 2118. Instead, the Court held that "[t]he terms 'malice' and 'reckless' ultimately focus on

the actor's state of mind," *id.* at 535, 119 S.Ct. 2118; thus, punitive damages are appropriate at least when a person discriminates "in the face of a perceived risk that [his] actions will violate federal law," *id.* at 536, 119 S.Ct. 2118. Additionally, the plaintiff must demonstrate that liability for punitive damages should be imputed to the employer. *See id.* at 539, 119 S.Ct. 2118. Stating the test in the negative, the Court held that "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII." *Id.* at 545, 119 S.Ct. 2118 (internal quotation marks omitted). This circuit has summarized the principles set forth in *Kolstad* as follows: When an employee has discriminated in the face of a known risk that his conduct will violate federal law,

> an employer may be held vicariously liable for a punitive damage award in a Title VII case for the intentionally discriminatory conduct of its employee, where the employee served the employer in a managerial capacity[ and] committed the intentional discrimination at issue while acting in the scope of employment, and the employer did not engage in good-faith efforts to comply with Title VII.

*Lowery v. Circuit City Stores, Inc.,* 206 F.3d 431, 442 (4th Cir.), *cert. denied,* 531 U.S. 822, 121 S.Ct. 66, 148 L.Ed.2d 31 (2000); *see id.* at 443.

Applying these principles here, we hold that the district court abused its discretion in denying Anderson's motion for a new trial on punitive damages. First, a reasonable jury could conclude, from the evidence presented, that Cooper engaged in his harassing conduct despite knowing that such conduct might violate federal law. Cooper testified that he had seen an EEOC poster regarding sexual harassment in the dispatch trailer. The poster, which was admitted into evidence, was titled "Sexual Harassment" in bold letters approximately one inch high; the poster informed readers that

> [s]exual harassment is unlawful and unacceptable in the workplace. Unwelcome sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature constitute sexual harassment.
>
> Sexual harassment is illegal whether it is initiated by a supervisor, a manager, a coworker, or any non-employee.

Def.'s Ex. 4. Although Cooper denied having read the poster, a reasonable jury could nevertheless infer that Cooper's awareness of the poster suggested at least a rudimentary knowledge of its import. Additionally, a reasonable jury could conclude that the rank offensiveness of Cooper's conduct demonstrates a deliberate disregard for Anderson's rights. *See Kolstad,* 527 U.S. at 535, 119 S.Ct. 2118 (observing that "egregious misconduct is evidence of the requisite mental state"); *Delph v. Dr. Pepper Bottling Co. of Paragould,* 130 F.3d 349, 358 (8th Cir.1997) (concluding that evidence supported conclusion that harassing supervisors were recklessly indifferent to plaintiff's rights, even though they had no training on workplace discrimination, because "one simply does not refer to black employees as did [plaintiff's] two supervisors without knowing that such language would offend a reasonable person in [plaintiff's] position"). Cooper's reckless indifference to Anderson's rights is further demonstrated by his response to her complaints regarding his conduct—that Anderson "might as well get used to it" because "[t]hat was the way of G.D.C.," J.A. 34. *See Beardsley v. Webb,* 30 F.3d 524, 531 (4th Cir.1994) (upholding punitive damages award in light of

evidence that when plaintiff complained about harassment, harassing supervisor told plaintiff "that she chose to work in a field occupied primarily by men, and if she didn't like it she could just get out" (internal quotation marks omitted)).

Second, Cooper was unquestionably a managerial employee. The evidence at trial established that he possessed authority to hire and fire drivers and to impose lesser forms of discipline, including docking a driver's wages. *See Lowery*, 206 F.3d at 444 (concluding that supervisor with hiring authority was a managerial employee); *EEOC v. Wal–Mart Stores, Inc.*, 187 F.3d 1241, 1247 (10th Cir.1999) (holding that assistant store manager with authority to suspend subordinates and to make hiring and firing recommendations was a managerial employee).

■■■ The third requirement—that the employee "committed the intentional discrimination at issue while acting in the scope of employment," *Lowery*, 206 F.3d at 442—is also satisfied. Although *Lowery* phrased this requirement in terms of the "scope of employment," the fundamental purpose of the requirement is best understood as assuring that some basis exists for imputing liability to the employer. While "[t]he general rule is that sexual harassment by a supervisor is not conduct within the scope of employment," *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 757, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the supervisor nevertheless may be aided in his harassment by his position with the employer, *see id.* at 763, 118 S.Ct. 2257. Accordingly, in the context of a hostile environment claim, the third requirement is satisfied when "a supervisor with immediate (or successively higher) authority over the [victimized] employee" creates "an actionable hostile environment." *Id.* at 765, 118 S.Ct. 2257.

■■■ Finally, the court must examine whether G.D.C. engaged in good faith efforts to comply with Title VII. Such efforts may include the implementation of a written policy against discrimination, *see Lowery*, 206 F.3d at 446, and employee training regarding federal anti-discrimination laws, *see Wal–Mart Stores*, 187 F.3d at 1248. Here, the evidence established that G.D.C. never adopted any anti-discrimination policy, nor did it provide any training whatsoever on the subject of discrimination. Ronald Cooper's placement of the EEOC poster regarding discrimination in the dispatch trailer simply does not constitute a good faith effort to forestall potential discrimination or to remedy any that might occur. Indeed, Anderson testified that she was not even aware of the existence of the poster. Under these circumstances, a rational jury could conclude that G.D.C. did not engage in good faith efforts to comply with Title VII.

IV.

Finally, Anderson challenges the amount of attorneys' fees awarded by the district court. Initially, Anderson requested a fee award of $36,695. This amount comprised 139.9 hours of principal attorney time at a rate of $200 per hour, plus 58.1 hours of associate attorney time at a rate of $150 per hour. In calculating the "lodestar" amount, the district court reduced the associate hours to 16.85, on the basis that the claimed amount of associate time was excessive. This yielded a lodestar amount of $30,507.50. The court then imposed an 80 percent reduction to account for Anderson's limited success, which it determined based largely on a comparison between the ad damnum in Anderson's complaint and the amount of damages actually awarded by the jury. *But see Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 338 & n. 4 (1st Cir.1997) (noting that "[t]he use of the ad damnum for [the pur-

pose of determining the degree of a plaintiff's success] is suspect because the ad damnum is an inherently artificial construct" and that even "a chasmal gulf between the damages requested ... and the damages awarded" should be but one factor in the calculus). Anderson appeals this award, maintaining that the district court abused its discretion in imposing the 80 percent reduction (she does not challenge the reduction of the associate time).

In view of our rulings that the jury should have been entitled to consider Anderson's retaliation claim and her request for punitive damages, we conclude that the best course is to vacate the fee award so that the district court may recalculate it in light of the results of further proceedings.

### V.

In summary, we conclude that Anderson presented evidence from which a rational jury could conclude that she suffered retaliation as a result of protesting the touching incident; accordingly, we reverse the grant of judgment as a matter of law on that count and remand for a new trial. Additionally, we conclude that the district court correctly denied G.D.C.'s motion for judgment as a matter of law on the hostile environment claim but that it erred in denying Anderson's motion for new trial on the question of punitive damages on that claim. Accordingly, we reverse the denial of the motion for new trial and remand for a new trial on punitive damages. Finally, we vacate the award of fees and costs so that it may be recalculated in light of the results of further proceedings.

*AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; AND REMANDED.*