NIEMEYER, Circuit Judge,
dissenting.
On this record, I would reverse the district court’s order denying Mintz Levin’s Rule 50 motion for judgment as a matter of law because Gallina failed, as a matter of law, to prove that her complaints with respect to Wishner’s behavior constituted protected activity. In particular, the evidence on the severity and pervasiveness of Wishner’s discriminatory conduct was too weak to support a jury finding that Gallina reasonably believed it to constitute a violation of Title VII. She also failed to prove that Mintz Levin’s proffered reason for discharging her — that she was performing poorly — was pretextual.
To survive a Rule 50 motion, a plaintiff in a Title VII retaliation claim must present enough evidence that a reasonable juror could find (1) that the plaintiff engaged in a protected activity; (2) that the employer acted adversely to the plaintiff; and (3) that the protected activity was causally related to the adverse action. Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997). And although the employee need not successfully establish an underlying violation of Title VII to succeed on a retaliation claim, for an employee’s complaints to constitute a “protected activity,” the employee must have held a reasonable belief that the complained-of conduct violated Title VII. Peters v. Jenney, 327 F.3d 307, 320-21 (4th Cir.2003). Thus, this “protected activity” test contains both a subjective and an objective component.
In this case, no reasonable juror could have concluded, based on the evidence presented at trial, (1) that Gallina actually held a belief that Wishner’s conduct violated Title VII or (2) that such a belief would have been objectively reasonable. This alleged belief of discrimination must be assessed in light of the underlying Title VII claim. In this case, Gallina alleged that her complaints were in response to Wishner’s treatment of her during the course of her employment. Her allegations most closely resemble a hostile work environment claim, the elements of which are (1) the conduct was done “based on the plaintiffs sex”; (2) the conduct was unwelcome; (3) the conduct was sufficiently “severe or pervasive” so as to alter the terms and conditions of her employment; and (4) the *566 conduct was imputable to her employer. Anderson v. G.D.C., Inc., 281 F.3d 452, 458 (4th Cir.2002).
The evidence presented at trial does not support a conclusion that Gallina held a good-faith, reasonable belief that Wishner’s conduct was sufficiently “severe or pervasive” as effectively to alter the terms and conditions of her employment. Id. The Supreme Court has noted that “ ‘simple teasing,’ offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the ‘terms and conditions of employment.’ ” Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal citation omitted). More relevant to the case before us, the Supreme Court has said that a single, isolated incident is insufficient to support a finding that the plaintiff reasonably believed that the conduct was severe and pervasive. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).
Gallina bases her claim on a handful of isolated incidents: (1) Wishner routinely used foul language with respect to Gallina’s work and threatened to fire her if she “f — ked up” assignments. (2) On a couple of occasions Wishner required Gallina to work on weekends even in the absence of a pressing due date. (3) Wishner required Gallina to remain in constant contact with him (“wired”) during her vacation. (4) Wishner commented about the commitment differential between men and women. (5) Wishner remarked on the audacity of a woman who returned from maternity leave and immediately asked about making partner. (6) On one occasion, Wisher called Gallina a “f — king idiot” and a “stupid b— ch.” And (7) on one occasion, Wishner asked Gallina to make coffee when she worked on a weekend.
With respect to the first three incidents (foul language, working weekends, and remaining “wired”), the record demonstrates that they were not discriminatory, as Wishner treated Gallina’s male counterparts in the firm in the same manner. The next two incidents (the comment about the “commitment differential” and the maternity leave story) are analogous to what the Supreme Court referred to as “simple teasing” or “offhand comments” in Faragher, 524 U.S. at 788. Gallina is thus left with only two legitimate instances of discriminatory conduct — the name-calling incident and the coffee-making incident. Those incidents, however, do not come close to being so “severe or pervasive” as effectively to change the terms and conditions of Gallina’s employment.
It is noteworthy that the record contains evidence that, at the time, Gallina did not understand Wishner’s conduct to be severe or persuasive, since she nominated Mintz Levin for the “100 Best Companies for Working Moms” list and recommended the firm to her boyfriend. If Wishner’s conduct were as severe or pervasive as Gallina claimed at trial, it is doubtful that she would have nominated or recommended the firm. The record does show that Wishner was a very demanding supervisor and often used inappropriate language when communicating with his inferiors, but Gallina has failed to prove that Wishner regularly treated her more severely than he treated male attorneys. Accordingly, I would reverse the district court’s denial of Mintz Levin’s Rule 50 motion.
In addition, the evidence failed to show that Gallina’s discharge was caused by her complaints about Wishner’s behavior. Mintz Levin provided extensive evidence of Gallina’s inadequate performance and failures as an attorney and contended that her poor performance was the reason that the firm discharged her. Gallina contends that the firm’s proffered reasons for discharging her were pretextual. Even *567 though Gallina presented some evidence that she performed well on occasion, she does not provide any response to the incidents in which she was clearly deficient. The firm pointed to four evaluations from attorneys in the Reston office (where Gallina worked) rating her work below-average. It described one transaction, on which she worked, where Gallina failed in her responsibility to file documents creating preferred stock shares, and another transaction where she failed to account for a stock split when preparing an employment agreement for the client. The latter mistake required the firm to rework the deal.
Because the evidence was insufficient to prove two of the three requirements for a Title VII retaliation claim, I would reverse the district court’s denial of Mintz Levin’s motion under Rule 50 and remand this case to the district court with instructions to enter judgment in favor of the defendants.