**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

KIMBERLY ADKINS,

*Plaintiff-Appellee,*

v.

CROWN AUTO, INCORPORATED; JOHN
D. MOSS; DONALD AARON,

*Defendants-Appellants,*

and

AUDREY MOSS; ELLEN STALLINGS,

*Defendants.*

No. 05-2057

KIMBERLY ADKINS,

*Plaintiff-Appellant,*

v.

CROWN AUTO, INCORPORATED;
AUDREY MOSS; JOHN D. MOSS;
DONALD AARON,

*Defendants-Appellees,*

and

ELLEN STALLINGS,

*Defendant.*

No. 05-2058

Appeals from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-04-42-4-JLK)

Argued: October 26, 2006

Decided: May 18, 2007

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Michael and Judge Motz joined.

**COUNSEL**

**ARGUED:** David Dennis Walker, Salem, Virginia, for Appellants/Cross-Appellees. Harding Kent Crowe, CROWE & DAVIS, Conover, North Carolina, for Appellee/Cross-Appellant. **ON BRIEF:** Elmer R. Woodard, III, Danville, Virginia, for Appellee/Cross-Appellant.

**OPINION**

KING, Circuit Judge:

Defendants Crown Auto, Incorporated, and John D. Moss and Donald Aaron (two of Crown Auto's employees), appeal in No. 05-2057 from the district court's denial of their motions, made under Rule 50(a) and (b) of the Federal Rules of Civil Procedure, for judgment as a matter of law on Plaintiff Kimberly Adkins's common law fraud claim. By her cross-appeal in No. 05-2058, Adkins challenges the court's refusal to submit the issue of punitive damages to the jury in the 2005 trial of this case. As explained below — in Part I on the Rule 50 motions, and in Part II on the punitive damages issue — we affirm the district court in both appeals.

I.

We first address the appeal of Crown Auto, Moss, and Aaron from the district court's denial of their Rule 50 motions for judgment as a matter of law. In so doing, we begin with a review of the trial evidence on Adkins's common law fraud claim, then outline the relevant

procedural history of this case and, finally, assess the court's rejection of the Rule 50 motions.

## A.

Crown Auto operates a used car business in Danville, Virginia, whose inventory includes wrecked automobiles that have been repaired or rebuilt for resale.[1] On July 15, 2003, Adkins purchased from Crown Auto an automobile that she was led to believe was a 2001 Hyundai Tiburon that had undergone minor repairs. Her sales contract with Crown Auto on the Tiburon was for $9200 (including $8200 financed through Crown Auto), plus $315.50 in taxes and fees. Aaron, a salesman for Crown Auto, assured Adkins that the Tiburon had sustained "cosmetic damage only" in a rear-end collision. J.A. 44.[2] Aaron also told Adkins that the repairs involved replacing the hatchback, rear bumper, and a rear quarter panel, and then painting the entire vehicle. Crown Auto's title reflected that the Tiburon had a single vehicle identification number ("VIN") and had been driven a total of 9480 miles.

In fact, however, the Tiburon had been "clipped" together from the remnants of two separate wrecked and salvaged vehicles: the front half (itself useable only after extensive repairs) of a 2001 Tiburon from Maryland, with mileage of 9480 miles and bearing the VIN reflected on the title delivered to Adkins; and the rear half of a 2000 Tiburon from Texas, with mileage in excess of 20,000 miles and an entirely different VIN.[3] In the process of clipping together two salvaged vehicles, the front portion of a salvaged vehicle is welded together at the factory seam with the rear portion of another salvaged vehicle. The title of a "clipped car" in Virginia bears the original VIN and total mileage of the front half of the vehicle. To apply for a title

---

[1] Our statement of the facts summarizes the evidence on the common law fraud claim in the light most favorable to Adkins, as the prevailing party. *See ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 113 (4th Cir. 2006).

[2] Our citations to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[3] A "salvaged vehicle" is, put most simply, one that has sustained damage in excess of its value.

on any repaired or rebuilt salvaged vehicle, a form "IS 22A" must be submitted to the Virginia Department of Motor Vehicles. The form includes an illustration of a vehicle with twenty numbered areas, with instructions to circle the number of each area that has been repaired, as well as a checklist of the parts replaced or repaired, with a blank space for other parts not listed.

In closing the Crown Auto sale of the "clipped car" to Adkins, Aaron provided her (at her request) a copy of the form IS 22A on the Tiburon (the "IS 22A"). Circled numbers on the IS 22A indicated that repairs to the clipped Tiburon were not limited to the rear end repairs previously disclosed by Aaron, but also included repairs to the vehicle's roof, windshield, hood, and front driver's side quarter panel and interior. Nearby handwritten notations on the IS 22A reflected that the Tiburon had undergone $4200 in repairs; these notations included the words "paint all." J.A. 144. Another handwritten notation, in the blank space for other parts replaced or repaired, stated "rear clip." *Id.* The IS 22A prompted Adkins to inquire "why everything on the vehicle basically had been circled." *Id.* at 53. In response, Aaron pointed to the notation "paint all" and explained that the circles merely reflected a bumper-to-bumper paint job. *Id.* at 54. Adkins also asked Aaron what the notation "rear clip" meant; Aaron responded that "rear clip" referred to attaching the rear bumper to the quarter panel. Assured by Aaron that a rear clip was "nothing major" and "no big deal," Adkins "took him at his word" and completed her purchase of the Tiburon. *Id.* at 56.[4]

Shortly after buying the Tiburon, Adkins began experiencing problems with its steering. Rebuffed in her efforts to have Crown Auto make repairs, she sought services elsewhere and learned that the Tiburon was in fact a "clipped car" that had been welded together — and poorly so — from portions of two separate salvaged vehicles. In May 2004, a few days after learning that the Tiburon had been clipped, Adkins returned to the Crown Auto dealership and confronted Moss, a Crown Auto manager who had signed the IS 22A.

---

[4]Although the IS 22A reflected that extensive repairs had been made to the Tiburon, it failed to indicate several parts of the vehicle that had been replaced or repaired (including parts of its significantly damaged front half).

Adkins attempted to return the Tiburon to Crown Auto, because she "didn't want a two-piece car," had been misled into believing that the vehicle had sustained only "minor cosmetic damage," and had not known that she was buying "a mangled-up piece of junk." J.A. 63. Moss and Crown Auto refused to accept her return of the Tiburon, and this lawsuit ensued.

B.

1.

On June 15, 2004, Adkins filed suit against five defendants — including Crown Auto, Moss, and Aaron (collectively, "Crown Auto") — in the Western District of Virginia. By her Amended Complaint of April 14, 2005, Adkins alleged four causes of action, including a claim of actual fraud under Virginia common law (the "fraud claim"). The district court possessed supplemental jurisdiction over the fraud claim pursuant to 28 U.S.C. § 1367.[5]

In its "Statement of Facts," the Amended Complaint details Adkins's purchase of the Tiburon, the vehicle's history, and Crown Auto's misrepresentations and concealment of the extensive repairs made to it, including the fact that it was a "clipped car." *See* Am. Compl. ¶¶ 6-23.[6] For example, the Amended Complaint alleges that Crown Auto failed to disclose "that the vehicle was in fact two cars cut apart and then poorly welded together, that other severe damage . . . had been done to the car, . . . [and] that it was not a 2001 Hyundai Tiburon, but partly a 2001 and partly a 2000." *Id.* ¶ 15.

Later, under the heading "Actual Fraud," the Amended Complaint spells out Adkins's fraud claim. *See* Am. Compl. ¶¶ 33-41. In plead-

---

[5]Three of the four alleged causes of action — for odometer fraud under a federal statute and consumer fraud and conversion under Virginia statutes — were disposed of prior to trial. The only remaining cause of action was Adkins's fraud claim. The two defendants who are nonparties to the Crown Auto appeal — Audrey Moss and Ellen Stallings — were dismissed at trial. Nevertheless, Audrey Moss is reflected as an appellee in Adkins's cross-appeal.

[6]The Amended Complaint is found at J.A. 16-27.

ing the fraud claim, the Amended Complaint incorporates by reference all preceding allegations (including the "Statement of Facts" and its assertions with respect to the "clipping" of the Tiburon). *See id.* ¶ 33. The Amended Complaint makes additional allegations in support of the fraud claim in its paragraphs 34 through 41, which focus on Crown Auto's false representations and lack of full disclosure regarding the Tiburon's mileage. Among these allegations is the following (the "paragraph 34 allegation"):

> In representing that mileage of the whole car was but [9480], and concealing the fact that the rear of the car's mileage was considerably higher, Defendants made false representations of fact as to the true mileage of the vehicle upon which they knew or should have known that purchasers such as the Plaintiff would rely.

*Id.* ¶ 34. Additionally, the Amended Complaint asserts, inter alia, that Crown Auto knowingly and intentionally misrepresented the Tiburon's mileage with the intent to mislead Adkins into purchasing the vehicle, *see id.* ¶¶ 35-36, 38-39; that Adkins justifiably relied on the false representations of mileage, which "played a material and substantial part in leading [her] to purchase the vehicle and to pay the price agreed," *id.* ¶ 37; and that, as a result of her reliance on the false representations, she "suffered substantial damages and losses," *id.* ¶ 41. The Amended Complaint seeks, in addition to compensatory damages, an award of punitive damages. *See id.* ¶ 40.

2.

In June of 2005, the district court conducted a four-day trial on the fraud claim before a jury in Danville. Relying on Rule 9(b) of the Federal Rules of Civil Procedure (requiring fraud to be pled with particularity), Crown Auto sought throughout the trial to limit Adkins's evidence to the Amended Complaint's allegations under the "Actual Fraud" heading (excluding the paragraph incorporating by reference all preceding allegations). In particular, Crown Auto contended that, consistent with its interpretation of the paragraph 34 allegation, Adkins should be confined to the theory that the sole misrepresentation on which she relied was "that the mileage of the whole car was but [9480]," when in truth "the rear of the car's mileage was consider-

ably higher." Am. Compl. ¶ 34. Under Crown Auto's "higher-mileage-only" theory, Adkins's success on the fraud claim depended on proof that she would not have purchased the Tiburon had she not been misled about the *higher* mileage of the vehicle's rear half, without regard to the fact that the Tiburon was a "clipped car"; the claim was doomed to fail, however, if the evidence established that Adkins's real concern was the fact that the mileage of the Tiburon's rear half was simply *different* (whether higher or lower) than that of its front half because the vehicle had been clipped.

Rather than accepting Crown Auto's higher-mileage-only theory of the fraud claim, the court permitted Adkins to present evidence supporting a broader "mileage-and-clipping" theory of her claim: that she had relied not only on Crown Auto's false representations of the mileage of the Tiburon (including the concealment of the different mileage of its front and rear ends), but also the interrelated concealment of the fact that the Tiburon was a "clipped car." The court also allowed Adkins to present evidence of other misrepresentations — including the concealment of the Tiburon's front-end repair history — for the limited purpose of showing Crown Auto's intent to mislead.[7]

At trial, Adkins testified that she would not have purchased the Tiburon if she had known that it had been clipped together from portions of two wrecked and salvaged vehicles. Her testimony posited several circumstances under which she might have learned the Tiburon was a "clipped car" and refused to consummate the purchase (e.g., being informed that the nose of the vehicle was from Maryland and its tail was from Texas; that the front and rear portions had two different VINs; and, significant to the fraud claim as pled, that the rear end's mileage was more than double that of the front end). Adkins averred that she "absolutely [would] not" have made the purchase if she had been informed by Crown Auto of the different mileage of the Tiburon's front half and its rear half. J.A. 65.

---

[7]Crown Auto contends on appeal that the trial court accepted its higher-mileage-only theory of the fraud claim, and that the court allowed Adkins to present evidence on the clipping issue only as proof of Crown Auto's intent to mislead. Crown Auto's contention on this point, however, is belied by the record.

Following the presentation of Adkins's case-in-chief, Crown Auto made an oral motion, pursuant to Federal Rule of Civil Procedure 50(a), for judgment as a matter of law. In so moving, it relied on the proposition that Adkins was limited under the paragraph 34 allegation to the higher-mileage-only theory of the fraud claim. According to Crown Auto, the fraud claim was unsustainable because of Adkins's testimony indicating that she would not have bought the Tiburon under any circumstances if she had known it was a "clipped car," including the circumstance that the mileage of the rear half was *less* than that of the front half. In response, Adkins pointed out that "the mileage differential is one of those pieces of information that would have let her know that the car was clipped, and that's what [Crown Auto] concealed." J.A. 128. The court took Crown Auto's Rule 50(a) motion under advisement, and the trial proceeded.

At the close of all the evidence, the court conducted a charge conference on the jury instructions and a motion filed by Adkins, pursuant to Federal Rule of Civil Procedure 15(b), to conform the pleadings to the evidence. In her Rule 15(b) motion, Adkins asserted that several fraud theories — in addition to the mileage-related fraud theory pled in the Amended Complaint — had been presented at trial by consent of the parties. These theories were based on, inter alia, misrepresentations and concealment of the separate VINs of the Tiburon's two halves and the repair history of the vehicle's front end. Most notably, the Rule 15(b) motion sought to again amend the Complaint to allege fraud in the concealment of the fact that the Tiburon was a "clipped car" — an allegation that Adkins had already insisted (and the court had accepted) was inextricably intertwined with the issue of the vehicle's varying mileage. The court denied the Rule 15(b) motion because evidence relating to the additional fraud theories had been admitted only over Crown Auto's objection and for the limited purpose of proving its intent to mislead. Nevertheless, the court allowed Adkins to proceed on her mileage-and-clipping theory of the fraud claim.

The court then instructed the jury on the elements of the fraud claim, which, under Virginia law, Adkins was required to prove by clear and convincing evidence.[8] The court explained to the jury that

---

[8] On appeal, Crown Auto does not challenge the propriety of the instructions, which are consistent with Virginia law. *See Hitachi Credit*

"[a]n actual fraud is a misrepresentation of a material fact knowingly and intentionally made . . . to mislead another person, which that person relied upon with the result that he was damaged by it." Trial Tr. vol. IV, 282, June 17, 2005. The court defined "reliance" as "a belief that a representation is true, which causes a person to take action he would not otherwise have taken." *Id.* at 282-83. And the court instructed the jury that "[i]f a party conceals a fact that is material to a transaction, knowing that the other party is acting on the assumption that no such fact exists, the concealment is as much of a fraud as if the existence of the fact were expressly denied, or the reverse of it expressly stated." *Id.* at 283. After deliberating, the jury, on June 17, 2005, returned its verdict awarding Adkins $23,700 in compensatory damages.[9]

3.

Following the trial, Crown Auto filed another motion, under Federal Rule of Civil Procedure 50(b), seeking judgment as a matter of law on the fraud claim, relying on the grounds advanced in support of the Rule 50(a) motion taken under advisement during trial. By Memorandum Opinion of July 27, 2005, the court denied the Rule 50(a) and 50(b) motions. *See Adkins v. Crown Auto, Inc.*, No. CA-04-42-4-JLK (W.D. Va. July 27, 2005) (the "Memorandum Opinion").[10]

---

*Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) ("To prevail on an actual fraud claim under Virginia law, a plaintiff must prove by clear and convincing evidence '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.'" (quoting *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994))).

[9]Notably, the district court declined to give an instruction proposed by Crown Auto, which would have directed the jury to limit compensatory damages to the misrepresentation of mileage (and not award damages for concealment of the clipping). The general verdict compensated Adkins for, inter alia, more than $3,000 in payments she had made on the Tiburon, taxes and fees, repairs, replacement costs, and the personal hardship she had suffered.

[10]The district court's Memorandum Opinion of July 27, 2005 is found at J.A. 151-57.

On July 28, 2005, judgment was entered in favor of Adkins. Crown Auto timely noted an appeal from the judgment, and we possess jurisdiction under 28 U.S.C. § 1291.

## C.

We review de novo the district court's denial of Crown Auto's Rule 50 motions. *See ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 113 (4th Cir. 2006). Under Rule 50, the issue we must assess is whether there was a sufficient evidentiary basis for a reasonable jury, viewing the evidence in the light most favorable to Adkins (as the prevailing party), to find for her on the fraud claim. *See id.* (citing Fed. R. Civ. P. 50(a); *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003)). And, as with other legal rulings, we review de novo the conclusions of law on which the court's denial of judgment as a matter of law was premised. *See id.* (citing *Benner v. Nationwide Mut. Ins. Co.*, 93 F.3d 1228, 1233 (4th Cir. 1996)).

In its Memorandum Opinion, the district court offered an explicit rejection of the underlying premise of Crown Auto's Rule 50 motions: that Adkins's fraud claim must be limited under Rule 9(b) to Crown Auto's interpretation of the paragraph 34 allegation in the Amended Complaint, i.e., its higher-mileage-only theory of the claim. As explained in the Memorandum Opinion, Crown Auto contended "that the actual representing of the mileage as 9480[ ] was not material to Adkins' decision to purchase the car citing testimony in which she states that she would not have purchased the vehicle even if the rear portion had zero miles on it." Mem. Op. 4. The court observed, however, that "this argument ignores the fact that this representation inherently conceals the fact that the car possessed varying mileage," and it was "this very concealment which would have alerted Adkins to the fact that the car was clipped." *Id.* at 4-5. Simply put, the court rejected Crown Auto's higher-mileage-only fraud theory in favor of Adkins's broader mileage-and-clipping theory of her claim.

In concluding that the Amended Complaint sufficiently alleged the mileage-and-clipping theory of the fraud claim, the court observed, inter alia, that the paragraph 34 allegation concerned not only "the *representation* of the mileage as 9480[ ]," but also "the *concealment*

of the fact that the mileage of the rear portion was higher." Mem. Op. 4. "In other words," according to the court, "not only was the representation of mileage material to Adkins's decision to purchase the car, but also the concealment of the fact that the car possessed varying mileage from front to back. . . . While her decision may not have actually turned on the specific mileage she was told, this does nothing to absolve Crown of concealing the fact that 9480[ ] wasn't the whole story." *Id.*

Additionally, the court recognized that in pleading the fraud claim under the heading "Actual Fraud," the Amended Complaint first incorporated by reference all preceding allegations, including the "Statement of Facts" in its paragraphs 6 through 23 detailing the clipping procedure, its concealment by Crown Auto, and the resulting problems experienced by Adkins. *See* Mem. Op. 5. Accordingly, the allegations in the "Statement of Facts," together with the paragraph 34 allegation, were sufficient to place Crown Auto "on notice that the fraudulent conduct complained of constituted not only the misrepresentation of mileage, but an intentional concealment of the larger fact that the car had been clipped." *Id.* Finally, the court ruled that Adkins had presented sufficient evidence on the elements of the fraud claim to sustain the verdict returned in her favor. *See id.* at 5-6.[11]

---

[11]In assessing the evidence in support of Adkins's fraud claim, the district court observed:

> Crown's concealment of the greater mileage attributed to the car used for the clip demonstrates that Crown falsely represented the true nature of the car: essentially that it was . . . a clipped car; a fact which if known by Adkins would clearly have affected her decision to purchase the car thus making it material. Crown, possessing and having signed the two separate salvage certificates, therefore had knowledge of this material fact at the time of purchase and by failing to disclose it, their intent to mislead became manifest. Adkins' reliance on Crown's representations (and lack thereof) was established the moment she purchased the car oblivious to the fact it was clipped, and the damage she realized soon emerged in the form of bills for repair and inspection along with the personal hardship she endured in confronting Crown about their misrepresentations.

Mem. Op. 5-6.

In challenging on appeal the district court's denial of its Rule 50 motions, Crown Auto stands by its position that the pleading requirements of Rule 9(b) restrict the fraud claim to its higher-mileage-only theory. Having carefully considered the issue, however, we agree with the court's rejection of that proposition. That is, the paragraph 34 allegation, together with other allegations made in the "Statement of Facts" and incorporated by reference into the "Actual Fraud" claim, state with sufficient particularity the broader mileage-and-clipping theory of the fraud claim. *Cf. Superior Bank, F.S.B. v. Tandem Nat'l Mortgage, Inc.*, 197 F. Supp. 2d 298, 314 (D. Md. 2000) (recognizing that, where fraud counts incorporate by reference all preceding paragraphs of complaint, "an examination of the entire [complaint] is necessary" to determine if pleading requirements of Rule 9(b) are satisfied). Moreover, the evidence was entirely sufficient to support the jury's verdict on liability. We therefore reject the Crown Auto appeal and affirm the judgment entered in favor of Adkins.[12]

## II.

We next turn to and address Adkins's cross-appeal in this proceeding, in which she challenges the district court's refusal to submit the issue of punitive damages to the jury. As best we can discern from the sparse record on this matter, and the sometimes conflicting recollections of counsel (on which we hesitate to rely), the court decided prior to trial to conduct bifurcated proceedings "in the event that the issue of punitive damages arises." *Adkins v. Crown Auto, Inc.*, No. CA-04-42-4-JLK (W.D. Va. Mar. 22, 2005) (order disposing of

---

[12]Crown Auto also contends that, by making her pre-verdict motion under Federal Rule of Civil Procedure 15(b) to amend the pleadings to allege fraud in the concealment of the clipping, Adkins essentially conceded that the Amended Complaint did not sufficiently allege such a theory. We disagree. At the time of Adkins's Rule 15(b) motion, Crown Auto was continuing to press its mileage-only view of the fraud claim. Moreover, although the court had permitted Adkins to present evidence on her broader mileage-and-clipping theory of fraud, it had not squarely rejected Crown Auto's position (as the court did in its post-trial Memorandum Opinion). It was thus entirely reasonable, under the circumstances, for Adkins to include the issue of clipping in her Rule 15(b) motion.

motions in limine). Adkins subsequently submitted a proposed instruction on the punitive damages issue. During the charge conference with counsel on the final day of trial (the relevant portion of which was neither recorded nor transcribed), the court stated either that the evidence on punitive damages was insufficient for the jury's consideration, or that it was otherwise disinclined to submit the punitive damages issue to the jury. Upon return of the compensatory damages verdict in favor of Adkins later that day, the court proceeded to excuse the jury. Adkins then objected (now on the record) "to the dismissal of the jury before the issue of punitive damages can be taken up." J.A. 141. The court initially expressed confusion over why Adkins would be making such an objection, then stated that it had already ruled that it "was not going to permit punitive damages." *Id.* The following exchange ensued:

> [ADKINS'S COUNSEL]: Your honor, I was unaware that you had ruled on that. I was aware that you indicated —

> THE COURT: I ruled on that earlier today.

> [ADKINS'S COUNSEL]: I didn't understand you ruled on that and would take exception to that rule.

> THE COURT: There's not sufficient evidence for punitives.

*Id.* at 141-42. Without further discussion of the punitive damages issue, the court dismissed the jury. Adkins did not, however, request the court to expound on its punitive damages ruling, either at the close of trial or in the post-trial proceedings.

After Crown Auto noted its appeal of the district court's denial of the Rule 50 motions, Adkins filed her cross-appeal on the court's refusal to submit the issue of punitive damages to the jury. As with Crown Auto's appeal, we possess jurisdiction over the cross-appeal pursuant to 28 U.S.C. § 1291. We review the court's punitive damages ruling for abuse of discretion. *Cf. Anderson v. G.D.C., Inc.*, 281 F.3d 452, 459 (4th Cir. 2002) (reviewing denial of motion for new

trial for abuse of discretion, where court had refused to submit issue of punitive damages to jury in non-bifurcated trial); *United States v. Abbas*, 74 F.3d 506, 513 (4th Cir. 1996) (recognizing that "[t]he decision of whether to give a jury instruction" is "reviewed for abuse of discretion"). A trial court abuses its discretion in refusing to submit a punitive damages issue for jury consideration if the jury could have concluded, from the evidence, that the plaintiff was entitled to punitive damages under the applicable legal principles. *See Anderson*, 281 F.3d at 459-61.

In Virginia, punitive damages may be recovered on a common law fraud claim — including a fraud claim arising from the purchase of a vehicle — only upon "proof, either direct or circumstantial, showing actual malice." *Jordan v. Sauve*, 247 S.E.2d 739, 741 (Va. 1978). "Actual malice" has been defined as "ill will, malevolence, grudge, spite, wicked intention, or a conscious disregard of the rights of another." *Id.* (internal quotation marks omitted). In order to establish on appeal that there was a sufficient showing of actual malice at trial, Adkins relies on her proof that Crown Auto misrepresented and concealed the different mileage of the two halves of her purchased Tiburon to conceal the fact that it was a "clipped car," as well as other evidence (admitted solely to establish intent to mislead) of efforts to hide the vehicle's true nature. According to Adkins, the jury could have concluded from this evidence, inter alia, that Aaron lied to her about the salvage and repair history of the Tiburon, and then compounded those misrepresentations with an incorrect explanation of the already incomplete information contained on the IS 22A.

As Crown Auto aptly points out, however, the record before us is silent on such salient matters as the evidence and contentions (if any) pressed by Adkins on the punitive damages issue before the trial court. The record also does not reflect the court's assessment of any such evidence or contentions, or the reasoning underlying the court's refusal to submit the punitive damages issue to the jury. In these circumstances, we are unable to conclude that the court abused its discretion in declining to submit the punitive damages issue to the jury. That is, because of Adkins's failure to properly develop the record on this issue, we are constrained to affirm the court's punitive damages ruling. *Cf. United States v. Cunningham*, 638 F.2d 696 (4th Cir. 1981) (affirming trial court's exclusion of prior criminal record of key gov-

ernment witness where defendant failed to develop record establishing that such evidence was admissible).[13]

## III.

Pursuant to the foregoing, we affirm the district court's denial of Crown Auto's Rule 50 motions, as well as its rejection of Adkins's request to submit the issue of punitive damages to the jury.

*AFFIRMED*

---

[13]Although we fault Adkins for her failure to sufficiently develop the record on the punitive damages issue, we also reject Crown Auto's contention that Adkins waived appellate review of the court's ruling thereon.