**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-2018**

VALINDA STREATER, individually and as guardian ad litem for minor other J.G.,

        Plaintiff – Appellee,

      v.

MATTHEW WILSON, in his Individual and Official Capacity as an Officer of the Charlotte Mecklenburg Police Department,

        Defendant – Appellant,

     and

CITY OF CHARLOTTE,

        Defendant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:11-cv-00548-MOC-DSC)

Argued: March 20, 2014        Decided: April 7, 2014

Before DUNCAN, AGEE, and WYNN, Circuit Judges.

Affirmed by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Agee and Judge Wynn joined.

**ARGUED:** Mark H. Newbold, Daniel Edward Peterson, OFFICE OF THE CITY ATTORNEY, Charlotte, North Carolina, for Appellant. Fred William DeVore, IV, DEVORE, ACTON & STAFFORD, P.A., Charlotte,

North Carolina, for Appellee.  **ON BRIEF:** R. Harcourt Fulton, OFFICE OF THE CITY ATTORNEY, Charlotte, North Carolina, for Appellant.  Fred W. DeVore, III, Derek P. Adler, DEVORE, ACTON & STAFFORD, P.A., Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Valinda Streater filed suit against Officer Matthew Wilson, a Mecklenburg County Police Officer, on behalf of her minor son, J.G., alleging that Officer Wilson violated J.G.'s Fourth Amendment rights by employing lethal force to effectuate a seizure. Officer Wilson filed this interlocutory appeal arguing that the district court erred by denying his motion for judgment as a matter of law on the ground of qualified immunity. For the reasons set forth below, we affirm.

I.

The facts, set out in the light most favorable to Streater as the non-moving party, follow. See Anderson v. G.D.C., Inc., 281 F.3d 452, 457 (4th Cir. 2002).

On the evening of October 16, 2010, Officers Matthew Wilson and Andrew Helms responded to a reported stabbing at Brandie Glen Road in Charlotte, North Carolina. The officers identified the victim, Valinda Streater, standing outside a friend's home. Streater, who had been stabbed in the arm and abdomen by her boyfriend, testified that she told the officers her assailant had already fled by car. Officer Helms transmitted this information and Streater's description of the assailant as a male weighing approximately 240 pounds by hand-held radio to all officers in the North Division, which includes Officer Wilson.

3

Meanwhile, Officer Wilson spotted two people at a distance of about fifty feet, one of whom was Streater's son, J.G., weighing between 115 and 120 pounds, walking quickly toward the scene. J.G. was carrying a kitchen knife that he picked up at home after learning that his mother had been stabbed. Standing between J.G. and the other officer and civilians, Officer Wilson saw what appeared to be a knife and unholstered his gun. He ordered J.G. to drop his knife three times. J.G. failed to immediately comply and continued to approach.

J.G. stopped 31.9 feet away from Officer Wilson and dropped the knife to his left. Thus when Officer Wilson again told him to disarm, J.G. responded, "Didn't you just see me drop the knife?" Joint Appendix, J.A. 143. Streater, who was standing several feet away, started shouting, "That's my son, please don't shoot." J.A. 119. Although Officer Helms heard her, Officer Wilson testified that he continued to believe J.G. to be a suspect in the stabbing who was armed, dangerous, and non-compliant.

Based on his assessment, Officer Wilson fired a total of four shots hitting J.G. twice. After the first two rounds, Officer Wilson testified that he paused for two or three seconds to reassess the situation before firing the third and fourth shots, which he intended to be fatal.

4

II.

Streater filed suit in Mecklenburg County Superior Court against Officer Wilson in his individual capacity under 42 U.S.C. § 1983 alleging that he violated J.G.'s Fourth Amendment rights by employing deadly force to effectuate a seizure.[1] The case proceeded to trial. At the conclusion of Streater's evidence, Officer Wilson filed a motion for judgment as a matter of law on the ground of qualified immunity.[2] The district court denied his motion but the jury failed to reach a verdict. After the district court declared a mistrial, Officer Wilson filed a renewed motion for judgment as a matter of law. He again argued that he is entitled to qualified immunity because he employed reasonable force under the totality of the circumstances.

Taking the facts in the light most favorable to Streater, the district court held that Officer Wilson was not entitled to qualified immunity. It concluded that J.G.'s Fourth Amendment right to be free from the use of deadly force when standing

_____

[1] Streater also filed various tort claims under state law against Officer Wilson and state and federal claims against the City of Charlotte that are not before us on appeal.

[2] Streater argues on appeal that Officer Wilson's delay in asserting qualified immunity resulted in an abandonment of this defense. Because we hold that Officer Wilson is not entitled to qualified immunity here, we need not resolve any issues of waiver. McAfee v. Boczar, 738 F.3d 81, 87 (4th Cir. 2013).

5

still and over thirty feet away from Officer Wilson was clearly established, and that no jury could find that the use of force was reasonable in these circumstances. This appeal followed.

III.

A.

We review a denial of a motion for judgment as a matter of law de novo. Anderson v. G.D.C., Inc., 281 F.3d at 457. "We must view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor." Id. "Judgment as a matter of law is proper only if 'there can be but one reasonable conclusion as to the verdict.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

In an interlocutory appeal of a denial of qualified immunity, we have jurisdiction "'to the extent that [an appeal] turns on an issue of law,'" but we cannot "re-weigh the evidence in the record to determine whether material factual disputes preclude summary disposition." Iko v. Shreve, 535 F.3d 225, 234 (4th Cir. 2008) (quoting Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)(emphasis omitted)).

We confine our review therefore to the question of whether, taking the facts in the light most favorable to Streater,

Officer Wilson is entitled to qualified immunity as a matter of law.

B.

On appeal, Officer Wilson contends that he is entitled to qualified immunity because his shooting of J.G. did not violate the minor's Fourth Amendment rights, and, in the alternative, that J.G.'s right to be free from such force was not clearly established. We disagree.

Qualified immunity shields government officials in their individual capacities from civil liability "unless the § 1983 claim satisfies a two-prong test: (1) the allegations, if true, substantiate a violation of a federal statutory or constitutional right and (2) the right was 'clearly established' such that a reasonable person would have known his acts or omissions violated that right." Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011) (internal citations omitted). "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." Meyers v. Baltimore Cnty., Md., 713 F.3d 723, 731 (4th Cir. 2013). We consider each prong in turn.

1.

"Whether an officer has used excessive force is judged by a standard of objective reasonableness." Clem v. Corbeau, 284 F.3d 543, 550 (4th Cir. 2002). The relevant question is

7

"whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996).

It is undisputed here that Officer Wilson used a lethal weapon with intent to kill. The "intrusiveness of a seizure by means of deadly force is unmatched," and a police officer may only employ such force where he "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Tennessee v. Garner, 471 U.S. 1, 9, 11 (1985). If an individual "poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." Id. at 11. And, while the qualified immunity doctrine accounts for mistakes police officers might make in the line of duty, "the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." Mazuz v. Maryland, 442 F.3d 217, 225 (4th Cir. 2006) (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). We cannot agree with Officer Wilson that his decision to employ lethal force to seize J.G. was a reasonable mistake.

Taking the facts and reasonable inferences in the light most favorable to Streater, we conclude that no reasonable officer would have believed J.G. presented a threat of

8

immediate, serious injury justifying the application of deadly force.  Significantly, we may separately consider non-continuous uses of force during a single incident to determine if all were constitutionally reasonable.  See Waterman v. Batton, 393 F.3d 471, 481 (4th Cir. 2005).  Even if we were to conclude, therefore, that Officer Wilson could have reasonably perceived J.G. to be a threat prior to firing his first two shots, we cannot find that his third and fourth shots were justifiable as a matter of law.

Officer Wilson himself admits that he had time to pause after the first two shots for a brief period to reassess the situation and decide whether further force was necessary under the totality of the circumstances.  Contrary to his contention on appeal, therefore, we are not confronted here with the "split-second judgments of a police officer to use deadly force in a context of rapidly evolving circumstances, when inaction could threaten the safety of the officers or others." Milstead v. Kibler, 243 F.3d 157, 165 (4th Cir. 2001).  Nor do we risk judging an officer's conduct "with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989) (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)).  At the point when Officer Wilson chose to fire a third and then a fourth shot, he knew or should have known that J.G. was over 30 feet away, standing still, unarmed, complying with his orders, and making

9

no attempt to escape. His mistaken belief that J.G. posed an immediate threat of serious physical injury to himself or to Officer Helms and civilians, who were even further away, was objectively unreasonable. We hold therefore that Officer Wilson's resort to deadly force violated J.G.'s Fourth Amendment rights. We must now determine whether J.G.'s right to be free from excessive force under these facts was clearly established at the time of the shooting.

2.

Whether a right was clearly established such that a reasonable officer would have known that his actions were unlawful must be analyzed "in light of the specific context of the case, not as a broad general proposition." Clem, 284 F.3d at 549 (internal quotations and citations omitted). When making this determination, we typically ask "whether a closely analogous situation ha[s] been litigated and decided before the events at issue, making the application of law to fact clear." Id. at 553. Further, in the rare case where the official's "conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established." Id. at 553 (quoting Mendoza v. Block, 27

10

F.3d 1357, 1361 (9th Cir. 1994)). We have no troubling holding that both standards are met here.

In *Garner*, the Supreme Court held under analogous circumstances that it was clearly established that "[a] police officer may not seize an unarmed nondangerous suspect by shooting him dead." 471 U.S. at 11. Similarly, by the time Officer Wilson reassessed the objective facts on the evening of October 16, 2010, and decided to take what he called a "kill shot," J.G. had disarmed, was neither approaching nor threatening the officers or civilians, and based on the police broadcast and Streater's protests, was not a suspect in the domestic assault. Moreover, even accepting Officer Wilson's argument that these facts are not directly analogous to *Garner*, J.G.'s right to be free from the use of lethal force to effectuate a seizure under the totality of the circumstances was "manifestly included within more general applications of the core [Fourth Amendment] principle[s]." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). We hold therefore that Officer Wilson violated J.G.'s clearly established Fourth Amendment rights.

IV.

Because we hold that Officer Wilson is not entitled to qualified immunity as a matter of law, the district court's denial of his renewed motion for judgment as a matter of law is

AFFIRMED.